Scott J. Davidson
c/o Non -Domestic –Mail
156 Knightshaven Way
San Jose, California [95111]

# Filed

JUL 2 0 2011

ADR

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Case No:

Scott J. Davidson

   Plaintiff

  v.

JP MORGAN CHASE BANK, NA,
WELLS FARGO BANK, NA as Trustee
of WAMU Mortgage Pass-through
Certificates, Series 2005-PR4,
Randall D. Naiman, NAIMAN LAW
GROUP, PROFESSIONAL
CORPORATION,

   Defendants

Trial by Jury
Demanded

# CV11-03566

HRL

## PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF

**Pursuant to Title 28 US Code at 2201 and 2202, Title 15 US Code, Section
1692(c), 1692(d), 1692(e), 1692(f), 1692(g), 1692(i) and Public Law at TITLE 15
USC, Section 1640, 1641(f), 1641(g) as Original Intent of Congress as follows:**

1. **§ 1640. Civil liability(a) Individual or class action for damages; amount of
award; factors determining amount of award**

Except as otherwise provided in this **section**, any creditor who fails to comply with
any requirement imposed under this part, including any requirement under **section** 1635

Complaint For Damages Page 1

of this **title, subsection (f) or (g) of section 1641 of this title,** or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)

(A)

(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction,

(ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000,

(iii) in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures; or

(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or........

§ **1641**. Liability of assignees
**(a) Prerequisites**
Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if

the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to

(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or

(2) a disclosure which does not use the terms required to be used by this subchapter.

**(b) Proof of compliance with statutory provisions**

Except as provided in section 1635 (c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor............

**(f) Treatment of servicer**

**(1) In general**

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

**(2) Servicer not treated as owner on basis of assignment for administrative convenience**

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

**(3) "Servicer" defined**

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605 (i)(2) of title 12.

**(4) Applicability**

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

**(g) Notice of new creditor**

**(1) In general**

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in

writing of such transfer, including—

**(A)** the identity, address, telephone number of the new creditor;

**(B)** the date of transfer;

**(C)** how to reach an agent or party having authority to act on behalf of the new creditor;

**(D)** the location of the place where transfer of ownership of the debt is recorded; and

**(E)** any other relevant information regarding the new creditor.

**(2) Definition**

As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

2. **Issues and Statement of the Case:** Defendants and Claimants participated in contract and commercial activity in respect to a Negotiable Instrument Note, which is attached to a bond, which is expressly governed by Federal law and the Uniform Commercial Code which are uniform statutory laws of all of the United States of America including the District of Columbia and all fifty states. Plaintiff makes the claim that the instrument/obligation became voidable when the Defendants participated in fraudulent and illegal activity, violating the rules of the laws under which the note/instrument bond is expressly governed and also violated their duty as officers sworn statutorily to act within the parameters of Uniform Commercial Code, the National Bank Act and other applicable statutes. **The Plaintiff does not ask for monetary damages unless the Defendants file an answer or a motion of any kind.** If, however, the Defendants file an answer, the Plaintiff wants damages as describes herein.

*Applicable Laws and Statutes*

**Short Plain Statement of the Claim**

3. On July 11, 2005 the original creditor, WASHINGTON MUTUAL BANK, FA entered into a residential mortgage agreement with me, the Plaintiff, in this matter, for property located in Copperopolis, California, which is my home. WASHINGTON MUTUAL BANK, FA subsequently sold the original note to a mortgage backed security and has failed to notify us of the transfer of the note, violating their duty of full disclosure to us, of notification of the transfer and assignment of the note, see Title 15 US Code Section 1641(g). The fact that the note was transferred several times and several assignments were recorded in this matter, and that the alleged loan servicer, JP MORGAN CHASE BANK, NA has steadfastly refused to identify the current note holder or bring forward the original note with indorsements, is forensic evidence that the note was sold.

4. The original lender and their successor-in-interest has a duty to notify us of changes in assignments of the note and deed of trust, see KIRBY v. PALOS VERDES ESCROW COMPANY, INC., 183 Cal. App. 3d 57; 227 Cal. Rptr. 785; (Calif. Court of Appeal, First Dist1986), which states: "The CUCC does not specify what type of "notification" is required to effectively inform the debtor of an assignment, but does provide that the failure to "reasonably identify the rights assigned" renders any notification ineffective.  (§ 9318, subd. (3).) (7) *In order to obligate the debtor to pay the assignee, in lieu of the assignor, the notification must (1) indicate that the account has been assigned*, (2) reasonably identify which rights have been assigned, and (3) specifically direct the debtor to pay the assignee." The assignee and the original lender failed to give the proper notification about the nature of the assignment, making the debt obligation unenforceable. I have title to the subject land and home, pursuant to the deed to the subject land and buildings, see **Exhibit A**. The subject property is located at 796 Uncle Billy

1   Court, Copperopolis, California 95008 and is described as follows: Real Property in the

2   unincorporated area of the Calaveras-County, California-state, described as follows:

3

4   Lot 157 of Lake Tullock Shores Subdivision Unit Number 2, Track number 237-B as

5   shown on the official map thereof, filed for record June 16, 1975, in Book 4 of

6   Subdivision Maps, Page 24, through 24v, Calaveras County Records, and commonly

7

8   known as 796 Uncle Billy Court, Copperopolis, California 95008.

9

10   5. I, Scott J. Davidson, signed a promissory note and deed of trust with

11   WASHINGTON MUTUAL BANK, FA on August 27, 2005, and this was recorded

12   September 30, 2005. An ASSIGNMENT OF MORTGAGE for the first Deed Of Trust

13   was signed and notarized on January 14, 2011, wherein JP MORGAN CHASE, NA while

14   allegedly acting as successor to WASHINGTON MUTUAL BANK, FA assigned the

15   Deed-Of-Trust, to WELLS FARGO BANK, NA as trustee of WAMU Mortgage

16   Pass through Certificates, Series 2005-PR4. It is well established that JP

17   MORGAN CHASE BANK, NA acquired selected assets of WASHINGTON

18   MUTUAL BANK, FA and they have not supplied any admissible evidence that

19   they acquired the Scott J, Davidson loan along with the acquisition of those

20   selected assets. The only problem with the date of execution of the assignment of

21   the deed of trust and party signing the document is that this investment trust

22   was established in 2005, and the SEC rules require the notes to be placed into a

23   REMIC's within three months of the signing of the loan documents, so that the

24   REMIC, WAMU Mortgage Pass through Certificates, Series 2005-PR4 received

25   the subject promissory note in 2005 not in January of 2011. Additionally, the

26   Notice of Default was signed and recorded on the same date as the Assignment

27

28

1   of Deed of Trust. Any actions taken by JP MORGAN CHASE BANK, NA to foreclose

2   on the subject property was as a stranger to the transaction, from the date of the

3   assignment of the note to WAMU Mortgage Pass through Certificates, Series 2005-

4   PR4 in 2005. I am the signatory/ principal on the attached document, a deed of trust, see

5   **Exhibit B**. This document was signed on August 27, 2005 as can be seen from the <u>date at</u>

6   <u>the top of the first page</u>. It appears that the notary did not sign the acknowledgment until

7   the 23th of September 2005, which means that the person who brought me the document

8   for signing was probably not the notary who signed the acknowledgment, and the notary

9   acknowledgment was signed almost one month after the document was signed by me as

10  reflected by the date on page 1 at the top of the page and the conflicting date on the last

11  page where the notary signed the document. As anyone can see the attestation clause

12  clearly reflects a date of September 23rd, 2005 as the date that the notary signed said

13  notary acknowledgement, as seen on the last page. The notarizing of a document almost

14  one month after the document was signed makes the document invalid and void ab initio,

15  since the notary did not notarize the document in accordance with California law, by

16  "authenticating" the signature almost one month late. The Notary did not faithfully

17  discharge his duties in accordance with California law, since the purpose of a notary is to

18  authenticate the genuineness of a signature and the notary did not witness the signature on

19  the date that it was signed and cannot attest to the genuineness of the signature and the

20  veracity of the statements in the notary's attestation clause. If this document was

21  notarized one month late then there has to be a subscribing witness, who signs the

22  document attesting to the fact that he or she witnessed the original signature, California

23  Civil Code Sections 1185, 1189, 1196 and 1197. It appears to me that the conflicting

24  dates on page one and the last page make this document invalid. A document is not

25  acknowledged when the notarization occurs one month late. Consequently, the Deed of

26  Trust is invalid and without force and effect in law, and cannot form the foundation for

27  the foreclosure process by the alleged creditor. "Civil Code section 1185 provides that a

28

1  notary must not take an acknowledgment of an instrument unless he knows, or has

2  satisfactory evidence, that the "person making such acknowledgment is the individual

3  who is described in and who executed the instrument; ..." This requirement makes the

4  certificate upon personal knowledge a guaranty of the genuineness of the instrument.

5  (*Anderson* v. *Aronsohn* (1919) 181 Cal. 294, 297 [184 P. 12]; *Joost* v. *Craig* (1901) 131

6  Cal. 504, 509 [63 P. 840].)" Garton v. Title Insurance and Trust Company, 106

7  Cal.App.3d 365 (1980). If this document was notarized one month late then there has to

8  be a subscribing witness, who signs the document attesting to the fact that he or she

9  witnessed the original signature, California Civil Code Sections 1185, 1189, 1196 and

10  1197.

11

12  6. Within the past six months a judge in a California Bankruptcy Court has issued an

13  opinion and order ruling that MERS in fact has no authority whatsoever to transfer any

14  interest in a deed. In the case of In re: Rickie Walker, Bankruptcy Court, Eastern

15  District, California, Case No. 10-21656, the Honorable Judge Ronald Sargis takes aim at

16  MERS and lays bare the lie that MERS and its "system" of assigning and conveying

17  millions of deeds of trust for mortgages is legal. In the case, the debtor Rickie Walker

18  filed an objection to the claim of creditor Citibank, N.A., to Mr. Walker's home. The

19  debtor argued that even though MERS assigned the subject Deed of Trust to Citibank as

20  a "nominal beneficiary" on behalf of Bayrock Mortgage Corporation on March 5, 2010,

21  this provided no evidence that Citibank had any interest whatsoever in the underlying

22  *promissory note*, since MERS itself had no interest in the note.

23

24  7. Judge Sargis observed that there was no evidence in the record that MERS ever had an

25  interest in the underlying note, so the assignment of the deed to Citibank on behalf of

26  Bayrock was meaningless in terms of Citibank having any right to the debtor's property

27

28

Complaint For Damages Page 8

secured by the note. Furthermore, like an increasing number of courts across this country, Judge Sargis honed in on MERS:

> Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore <u>could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed</u>. *See In re Foreclosure Cases*, 521 F.Supp.2d 650, 653 (S.D. Oh. 2007); *In re Vargas*, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); *Landmark Nat'l Bank v. KeslerI*, 216 P.3d 158 (Kan. 2009); *Lasalle Bank v. Lamy*, 824 N.Y.S.2d 769 (N.Y. Sup.Ct. 2006). Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, **this court is convinced that MERS had no interest it could transfer to Citibank**.

<u>In re Walker</u>, p. 2 (emphasis added). The Judge then slammed the hammer down, so to speak:

> "Since MERS did not own the underling [sic] note, it could not transfer the beneficial interest of the Deed of Trust to another. **<u>Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law</u>**.", In Re Walker, Supra. (Emphasis Added.)

8. In effect, Judge Sargis revealed that the Emperor was not wearing any clothes: MERS did not have the authority to transfer anything despite having ostensibly done so for millions of transactions since its founding.

1
2   9. In short, the involvement of MERS in *any* mortgage is cause for concern and, frankly,

3   outright suspicion, just as the Landmark court observes: "In attempting to circumvent the

4   statutory registration requirement for notice, MERS creates a system in which the public

5   has no notice of who holds the obligation on a mortgage." And, by extension, who is

6   legally able to foreclose on a property. To put it bluntly:

7   **Any attempt to transfer the beneficial interest of a trust deed without ownership of**

8   **the underlying note is void under California law. Similarly, JP Morgan Chase Bank,**

9   **NA did not have the power to assign the Deed-Of-Trust, because it had already been**

10  **assigned six years earlier in 2005, by WASHINGTON MUTUAL BANK, FA.** As a

11  result, the Assignment of Deed of Trust signed on January 14, 2011 is void and without

12  force and effect in law, **See Exhibit C.** No evidence has been advanced or presented by

13  the Defendants as to who the actual note holder is so that the identity of the note holder is

14  a mystery, and the failure to disclose within thirty days is a violation of Title 15, US

15  Code, Section 1641(g).

16
17
18      10. It is clear that the mere existence of a comprehensive statutory scheme such as

19  California Civil Code 2924-2924k does not necessarily eliminate all further remedies

20  without the consideration of the relevant policy concerns. Indeed, California courts have

21  repeatedly allowed parties to pursue additional remedies for misconduct arising out of a

22  non-judicial foreclosure sale when not inconsistent with the policies behind the statutes.

23  In *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1231 [44 Cal.Rptr.2d 352,

24  900 P.2d 601], the California Supreme Court concluded that a lender who obtained the

25  property with a full credit bid at a foreclosure sale was not precluded from suing a third

26  party who had fraudulently induced it to make the loan. The court concluded that "'the

27
28
                            Complaint For Damages Page 10

1   antideficiency laws were not intended to immunize wrongdoers from the consequences of

2   their fraudulent acts'" and that, if the court applies a proper measure of damages, "fraud

3   suits do not frustrate the antideficiency policies because there should be no double

4   recovery for the beneficiary." (*Id.* at p. 1238.) In *South Bay Building Enterprises, Inc. v.*

5   *Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1121 [85 Cal.Rptr.2d 647], the

6   court held that a junior lienor retains the right to recover damages from the trustee and the

7   beneficiary of the foreclosing lien if there have been material irregularities in the conduct

8   of the foreclosure sale. (See also *Melendrez v. D & I Investment, Inc.*, *supra*, 127

9   Cal.App.4th at pp. 1257-1258; *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1095 [106

10  Cal.Rptr.2d 443] [a trustee's sale tainted by fraud may be set aside].)

11

12  11. I have been unable to make the monthly payments on the subject property for some

13  time now. The Defendant, JP MORGAN CHASE BANK, NA claims to have the power

14  to enforce the original note and has been making preparations to foreclose on the subject

15  property, in spite of the fact that they have been securitizing their notes, since at least

16  2000, See **Exhibit D**, a copy of a Prospectus from the SEC website, whereby a bank

17  called BANKUNITED, FSB created a REMIC, real estate mortgage investment conduit,

18  in order to make more profits from the original loan than they would have if they had just

19  collected monthly payments from the note. This bank has a history of securitizing their

20  notes and thus has securitized this note and has no standing to foreclose or claim to have

21  a continuing interest in the note, since that was transferred when they sold the note.

22

23

24  12. JP MORGAN CHASE BANK, NA, The Defendant, and their agents and assigns lack

25  standing to foreclose, because they have failed and refused to bring forward the original

26  note with the endorsements on the back of the note. Federal courts have consistently ruled

27

28

1  that banks must be in possession of the original note, see Matter of Staff Mortg. & Inv.

2  Co. 550 F. 2d 1228, (CA 9, 1977); Motobecane America, Ltd. v. Patrick Petroleum Co.,

3  791 F.2d 1248, (CA 6, 1986); In re Maryville Sav. & Loan Corp., 743 F.2d 413, CA 6,

4  1984); In re Holiday Intervals, Inc., 931 F.2d 500, (CA 8, 1991).  Other Federal Courts

5  have stated that the mortgage creditor must have an endorsement stamp on the note,

6  endorsing the note over to that creditor, see In Re BARRY WEISBAND, 4: 09-bk-05175

7  EWH, (US Bankruptcy Court, Arizona, 2009); IN RE: LAVERL H. WILHELM, 08-

8  20577-TLM, (US Bankruptcy Court, Idaho, 2009). The Defendant, JP MORGAN

9  CHASE BANK, NA is not the real-party-in-interest, pursuant to FRCP Section 17(a),

10  without bringing forward the original note and demonstrating that they are in possession

11  of the note, and as a result, do not have standing to claim to be a creditor with the powers

12  of foreclosure.

13

14

15  13. The Court in RE: LAVERL H. WILHELM, supra, stated as follows: **"Before delving**

16  **into the specifics of these cases, it is worth reiterating that changes in mortgage**

17  **practices during the past several years – including, most prominently, the serial**

18  **assignment of mortgage obligations – have complicated the factual situations to**

19  **which the standing analysis applicable to stay relief motions must be applied.** See In

20  re Sheridan, 09.1 I.B.C.R. 24, 24, 2009 WL 631355, at *1 (Bankr. D. Idaho 2009).

21  Several bankruptcy courts – including this Court, in In re Sheridan – have been required

22  to issue decisions explaining who does (and who does not) have standing to seek stay

23  relief. See, e.g., In re Jacobson, 402 B.R. 359, 365-67 (Bankr. W.D. Wash. 2009); In re

24  Vargas, 396 B.R. 511, 520-21(Bankr. C.D. Cal. 2008); In re Hwang, 396 B.R. 757, 765-

25  69 (Bankr. C.D. Cal.2008); In re Mitchell, 2009 WL 1044368, at *2-6 (Bankr. D. Nev.

26

27

28

1    Mar. 31, 2009). In In re Sheridan, for example, this Court explained that a stay relief

2    motion **"must be brought by one who has a pecuniary interest in the case and, in** 4

3    For ease of reference, the cases are listed in alphabetical order."

4

5    14. Standing and the real-party-in-interest requirements are related. Standing

6    encompasses both constitutional and prudential elements. See, e.g., Warth v. Seldin, 422

7    U.S. 490, 498-99 (1975); In re Simplot, 2007 WL 2479664, at *9 (Bankr. D. Idaho. Aug.

8    28, 2007). To have constitutional standing, the litigant must allege an "injury that is

9    concrete, particularized, and actual or imminent; fairly traceable to the defendant's

10   challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Fed.

11   Election Comm'n, __U.S. __, 128 S. Ct. 2759, 2768 (2008). Prudential standing includes

12   the idea that the injured party must assert its own claims, rather than another's. See, e.g.,

13   Warth, 422 U.S. at 499. Thus, the real-party-in-interest doctrine generally falls within the

14   prudential standing doctrine.

15

16

17   15. The Bankruptcy Court in In Re LAVERL H. WILHELM, supra stated: **"To resolve**

18   **the standing and real-party-in-interest issues presented here, the Court must**

19   **determine who has the right to enforce the notes. Because bankruptcy law does not**

20   **provide for enforcement of promissory notes, the Court looks to applicable non-**

21   **bankruptcy law.** See generally Butner v. United States, 440 U.S. 48, 54-55 (1979)

22   (nature and extent of property interests in bankruptcy are determined by applicable state

23   law)." The court in the above case also concluded that the mortgage creditors in this case

24   did not have standing to bring a motion for relief from stay because they could not bring

25   forward a note with an endorsement stamp, showing that the note was endorsed in their

26

27

28

Complaint For Damages Page 13

1    name.   The court stated further:   **"The "holder" option is not available to Movants;**

2    **none of the notes is payable to the Movant and none of the notes has been indorsed,**

3    **either in blank or specifically to a Movant.** See id.; Idaho Code § 28-3-205 (regarding

4    special and blank indorsements)."

5

6    16. Similarly, within the past two weeks, the Ninth Circuit Court of Appeals issued a

7    ruling, In re Veal, AZ-10-1055-MkKiJu which is approved for publication, **so all Federal**

8    **Courts in the Ninth Circuit are bound by this decision**, which states the following:

9    "Wells Fargo presented no evidence as to who possessed the note and no evidence

10   regarding any property interest it held in the Note." The Ninth Circuit was highly critical

11   of the quality of the bank's evidence that they are the holder-in-due-course of the note as

12   follows: "The Dorchuck letter is just that; a letter, and nothing more. Mr. Dorchuck does

13   not declare that his statements are made under penalty of perjury, nor does the document

14   bear any other traditional elements of admissible evidence................No basis was laid

15   for authenticating or otherwise admitting the Dorchuck letter into evidence at any of the

16   hearings in this matter." The Ninth Circuit also stated that Uniform Commercial Code

17   governs a determination as to who is entitled to enforce the note as follows: "We hold

18   that a party has standing to prosecute a proof of claim involving a negotiable promissory

19   note secured by real property if, under applicable law, it is a "person entitled to enforce

20   the note" as defined by the Uniform Commercial Code."

21

22   17. It is widely known and acknowledged that the banks have been selling virtually all of

23   their notes to mortgage-backed-securities and the large banks, such as WELLS FARGO

1  BANK, NA, who sell their notes to their own mortgage-backed-securities, managed by a

2  division of the bank, so that the note is owned by a pool of investors, and is no longer

3  owned by the bank. These Defendants are attempting to deprive me of my rights to use

4  and ownership of my land and home, in violation of the FAIR DEBT COLLECTION

5  PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e, 1692f, 1692g, 1692i, by

6  foreclosing without standing and without having recorded a valid Assignment of Deed of

7  Trust as required under California Civil Code 2932.5, which is an absolute requirement

8  and a prerequisite for taking actions to foreclose and sell the subject property pursuant to

9  California Civil Code 2932.5. As discussed earlier, the Assignment of Deed of Trust is

10  signed by the wrong party, someone who is presenting themselves as an assignor,

11  authorized to assign the Deed-of-Trust, even though the Deed of Trust was already

12  assigned to WAMU Mortgage Pass through Certificates, Series 2005-PR4 in 2005,

13  therefore, the assignment of Deed-Of-Trust is void and without force and effect in law. In

14  this case, the original lender has obviously assigned the original note and deed of trust to

15  a third party in 2005 and there is an apparent stranger-to-the-transaction attempting to

16  enforce the note and the Deed-Of-Trust has not been properly acknowledged, having been

17  notarized one month later than it was signed, meaning that the Deed-Of-Trust is not valid

18  and without force and effect in law and cannot be used to enforce the note and Deed-Of-

19  Trust, and the Defendants are acting without standing.

20

21

22  18. The Defendants do not have the authority to foreclose because they have not produced

23  the note when requested and do not have possession of the note and therefore under

24  California Commercial Code Sections 3-205, 3-301, 3-305, 3-309, 1-201(b)(21)(A), 9-

25  304, 9-305 the Defendants do not have standing to foreclose and they are not the real-

26

27

28

1  party-in-interest, and have not ratified the commencement of their claim. California

2  Commercial Code Section 3203 states that the negotiation of the instrument or

3  promissory note is not complete until the instrument (the note in this case) has been

4  indorsed.  Subsection (c) states as follows:

5      "(c) Unless otherwise agreed, if an instrument is transferred for

6      value and the transferee does not become a holder because of lack

7      of indorsement by the transferor, the transferee has a specifically

8      enforceable right to the unqualified indorsement of the transferor,

9      but negotiation of the instrument does not occur until the

10      indorsement is made."

11

12

13  19. The Defendants have, therefore, no right, title or interest in the subject property, and

14  no claim to ownership or a security interest in the subject property, since the note cannot

15  be produced and the note is lost, stolen, destroyed or damaged and no attempt to satisfy

16  the requirements under California Commercial Code Section 3309 has been made. The

17  Defendants have violated multiple sections of the Fair Debt Collection Practices Act,

18  Title 15 US Code including Sections 1692c, 1692d, 1692e, 1692f, 1692g, 1692i.

19

20

21  20. **The Defendants have failed to take necessary actions that are conditions**

22  **precedent to foreclosure.** The Defendant does not have standing to foreclose because

23  they have not supplied any material evidence that they are in possession of the note and

24  that thus have violated the hearsay rule, especially Section 602 of the Federal Rules of

25  Evidence. I cited legal authorities making it clear and plain that they must be in

26  possession of the note. I have cited Matter of Staff Mortg. & Inv. Co., 550 F. 2d, 1228

27

28

(Ninth Circuit, 1977) in this regard. The Ninth Circuit has affirmed this ruling on seven

separate occasions and <u>Matter of Staff Mortg. & Inv. Co</u>., supra has been cited as an

authority by the Sixth and Eighth Circuits, and is, therefore, established Ninth Circuit law

and the law in several other Judicial Circuits. The Fifth Circuit has issued a similar ruling.

If the Defendants cannot demonstrate that they are the holder of the note, then they are

not currently a party to the transaction and then they cannot foreclose and they cannot file

an unlawful detainer case against me because of a lack of standing. Rule 17(a) of the

Federal Rules of Civil Procedure requires ratification of commencement by the Claimant,

so that the Claimant is required to demonstrate that they are the real-party-in-interest and

the actual-note-holder. The alleged-creditor is not a co-signer and thus they do not have

the right-of-subrogation as strangers to the transaction. I stated facts that are unrebutted

and the Defendant, JP MORGAN CHASE BANK, NA is choosing to ignore this. In

addition to being in possession of the note, the foreclosing-party in a foreclosure has to

have a note endorsed in their name to meet the requirements under Uniform Commercial

Code, See **Exhibit E** and **Exhibit F**, two rulings by two different federal bankruptcy

courts in which the judges both stated that the creditor in a mortgage foreclosure must

have an endorsed note in their possession. A close scrutiny of the Securities and

Exchange Committee website entitled "EDGAR ON LINE" will supply anyone reviewing

the website insight into how many separate investment funds the banks holding

companies, such as WELLS FARGO ASSET SECURITIES CORP. have created, leaving

no doubt that the banks are selling each and every one of their notes to various investment

funds. As a result of the foregoing failure to show that the Defendant JP MORGAN

CHASE BANK, NA is in possession of the note with an endorsement as required under

California Commercial Code 3203, 3204 and 3205 and show the chain of title of the note,

the actions complained of here are a violation of the FAIR DEBT COLLECTION

PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e, 1692f, 1692g, 1692i.

21. The servicing agent may have standing if acting as an agent for the holder, assuming

that the agent can both show agency status and that the principle is the holder.  In re

Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

…"Only the Holder of the Note is the "Real Party in Interest."…. The right to enforce the

mortgage on behalf of the note holder does not, however, render the note holder's agent

into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an

agent solely for the purpose of bringing suit is viewed as a nominal rather than a real

party in interest and will be required to litigate in the name of his principal rather than in

his own name." Wright & Miller, 6A Federal Practice & Procedure Civ. 2d § 1553.

22. "Consequently, even if a court finds that a proper agency relationship exists between

the holder of a note and the party seeking to enforce its security, this does not excuse the

agent from the requirement that an action be prosecuted in the name of the note holder,

who is the real party in interest. Fed.R.Civ.P. 17(a) (1)".  In re Hwang, 396 B.R. 757

(Bankr. C.D. Cal. Sept. 2008). The alleged note holder has not met the requirements

under the Federal Rules of Civil Procedure Rule 17(a) to establish that they are the real

party-in-interest, and therefore, has no standing. In addition, the note is an adjustable rate

note, with an adjustable rate rider made a part of the note, which states in the body of the

document that the rider is "deemed to amend and supplement….. the deed of trust",

which changed the note from a conditional promise to pay to an unconditional promise to

pay, and means that the sale of the note was unlawful and in violation of Sections 3104

and 3106 of California Commercial Code, since a conditional promise to pay cannot be sold or transferred, thus the note is unenforceable by anyone but the original note holder. The note was sold to an asset-backed-security and is therefore unenforceable by them.

**Factual Allegations**

23. The Defendant JP MORGAN CHASE BANK, NA has failed and refused to produce the note with endorsement stamps showing who is in possession of the note and revealing who is the holder-in-due-course of the note.

24. The Defendant JP MORGAN CHASE BANK, NA is required to produce the note and be in possession of the note under California Commercial Code Sections 3202, 3203, 3204, 3205, 3301, 3305, 3309, 1201(b)(21)(A), 9304 and 9305. There also cannot foreclose when the note was assigned to another party six years previously, and the Assignment-Of-Deed-Of-Trust was executed by someone who does not have standing because they did not hold the note and Deed-of-Trust at the time that the assignment was executed. The proper time to record an Assignment-Of-Deed-Of-Trust was in the fall of 2005.

25. The Defendants have not even produced hearsay evidence that they or their principals or agents are holding the note and have failed to produce any admissible evidence regarding who the note was assigned to, see Federal Rules of Evidence, Section 602.

26. Many banks and other lenders filed a series of reports and official filings with the Securities and Exchange Commission in the year 1999 through and 2010, in which they established an investment trust for mortgages executed during the period of time when my deed of trust and note was executed. My loan documents were signed on August 27, 2005. Thus the mortgage and note for my property was undoubtedly part of a pooling and servicing agreement whereby investors purchased the mortgage and note from WASHINGTON MUTUAL BANK, FA, or through their investment and securitization corporation, commonly known as the depositor, placing the note into a trust with thousands of notes.

27. The sale of the Note and Deed of Trust to the Mortgage backed Security has not been revealed or brought forward by the Defendant, JP MORGAN CHASE BANK, NA. The SEC website describes these trusts as a mortgage-backed-security in violation of Title 15 US Code, Section 1641(g).

28. The Defendant, JP MORGAN CHASE BANK, NA, cannot foreclose or enforce the debt because they are not a legitimate creditor and not a part of the chain of title to the promissory note and Deed-Of-Trust in this matter.

29. The undisclosed note buyer, a mortgage-backed-security, cannot foreclose because they do not have the right of subrogation as a stranger to the transaction, see AETNA L. INS. CO. V. MIDDLEPORT, 124 U.S. 534, (1888), Stating that the right of subrogation does not exist for a stranger to the transaction and that only a cosigner or surety or an insurance company who has insured the asset has the right of subrogation. Additionally,

Complaint For Damages Page 20

they do not have the proper assignment documentation, including an endorsed note. In addition, even if they did have this documentation they could not bring forward the indorsed note because the trust that created the investment fund is a REMIC or "Real Estate Mortgage Investment Conduit" and will lose their tax exemption as a pass through entity if they file any sort of claim or supply an endorsed note.

30. The two important documents in the mortgage loan made to the home owner/borrower are the promissory note and the mortgage or a deed of trust.

31. The Sponsor is supposed to arrange for title to the mortgage loans to be transferred to an entity known as the depositor, which then was supposed to transfer title to the loans to the trust.

32. As mentioned, the assignment of the mortgages never properly occurred and this is the subject of countless lawsuits by many borrowers such as Plaintiff, see DEXIA HOLDINGS, Et al v. COUNTRYWIDE FINANCIAL CORPORATION, Et al, a current lawsuit filed in The Supreme Court in New York County, New York.

33. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected. The trust is a mere conduit that has no power to do anything, and has no real trustee.

34. In addition, there were usually "credit enhancements" which could take several forms including such things as Credit Default Swaps, "excess spreads", over collateralization, reserve accounts, surety bonds, wrapped securities, letters of credit, and cash collateral accounts. The well-known problems with the AIG insurance bailout was part of this "credit enhancement" process. Plaintiff alleges that once a proper accounting is done and proper credits applied, Plaintiff will owe nothing on this loan making the foreclosure and the unlawful detainer action simply a part of the ongoing fraud. "Under the double recovery doctrine, "there can be only one recovery of damages for one wrong or injury." 25 C.J.S. *Damages* sec. 5 (2002) (citing *Brightheart v. McKay,* 420 F.2d 242 (D.C. Cir. 1969)). Thus, "[a] plaintiff may not recover damages twice for the same injury simply because he or she has two legal theories." *Id.* (citing *Greenwood Ranches, Inc. v. Skie Constr. Co.,* 629 F.2d 518 (8th Cir. 1980)); *see also* 47 Am. Jur. 2d *Judgments* sec. 808 (2006) (noting the principle that an injured party should not be able to recover more than once for the same wrong); Restatement (Third) of Torts: Apportionment of Liability sec. 25 (2000) (setting forth that payment of full amount of damages satisfies plaintiff's rights against all tortfeasors for an indivisible injury). We have previously applied the double recovery doctrine to prohibit a plaintiff's further recovery for the same injury. *See Phelps v. State Farm Mut. Auto. Ins.,* 112 Nev. 675, 680, 917 P.2d 944, 948 (1996) (requiring insurance carrier to pay for insured's already compensated damages would violate policy against double recovery; *see also Grosjean v. Imperial Palace*, 125 Nev. ___, ___, 212 P.3d 1068, 1084 (2009),   In *Grosjean*, we recently held that the double recovery doctrine barred a plaintiff's state law tort claim when the plaintiff had already recovered for the same injuries on a federal sec. 1983 claim.  We noted that when a plaintiff asserts claims under different legal theories, "he or she is not entitled to a separate compensatory

damages award under each legal theory." *Id.* at ___, 212 P.3d at 1084. Rather, "the plaintiff is entitled to only one compensatory damage award on one or both theories of liability." *Id.* At ___, 212 P.3d at 1084. "Accordingly, we hold that a plaintiff can recover only once for a single injury even if the plaintiff asserts multiple legal theories. Thus, satisfaction of the plaintiff's damages for an injury bars further recovery for that injury."

*Elyousef v. O'Reilly & Ferrario, LLC,* 126 Nev. Adv. Op. 43 (2010), pp.2-3 Opinion issued 11/18/10. The Defendants named have received TARP money from the Federal government to cover their losses and they have received money from credit default swaps. They clearly do not need to be paid yet again.

35. The Defendant JP MORGAN CHASE BANK, NA is functioning as a loan servicer and is thereby subject to the Fair Debt Collection Practices Act, and is no longer the holder of the note. The Defendants have violated multiple sections of the Fair Debt Collection Practices Act, Title 15 US Code including Sections 1692c, 1692d, 1692e, 1692f, 1692g and 1692i.

36. Even before the loans were made, the "Securitizers" had planned and arranged to securitize the loans. In the course of securitizing the loans, I, the Plaintiff, am informed and believe that the Securitizers had a practice of taking more money from the Investors than was loaned to the home owners, and that they concealed this practice from both the home owners (including Plaintiff and those similarly situated) and the Investors. In addition, there were usually "credit enhancements" which could take several forms including such things as "excess spreads", over collateralization, reserve accounts, surety bonds, wrapped securities, letters of credit, and cash collateral accounts. (See,

http://en.wikipedia.org/wiki/Credit_enhancement for a more detailed description). On information and belief, I, the Plaintiff, allege that the well known problems with American International Group (AIG), relate to credit enhancements. Both the Plaintiff and the Investors have claims to the credit enhancement funds as well as undisclosed fees taken by the Originators and Securitizers and possible credits and offsets for other items.

As to the Plaintiff, such funds should be credited against my loan. Based upon information and belief, Plaintiff alleges that once a proper accounting is done and proper credits applied, Plaintiff will owe nothing on their loans making the foreclosure actions simply a part of the ongoing fraud.

37. The case of US Bank Nat'l Ass'n v. Ibanez/Wells Fargo Bank, N.A. v. Larace, 2009 WL 3297551 (Mass.Land. Ct, Oct. 14, 2009) explains why the Plaintiff – and not the Defendant – possesses rightful title. This case was a consolidation of two separate, but factually related, cases. In both cases, the Plaintiffs' banks were both the foreclosing parties as well as the only bidders at auctions for the subject homes. In each case, neither bank could obtain title insurance and therefore brought the subject actions to "remove a cloud from the title." Ibanez, 2009 WL 3297551 at *1. Furthermore, as the Plaintiff conceded, neither had recorded the assignment of the foreclosed mortgage until *after* the exercise of the power of sale, and each wanted to know: did they in fact have the right to foreclose on the properties in question?

38. The Ibanez court easily disposed of that specific question – no, they did not (Ibanez, 2009 WL 3297551 at *2). But the court went further, examining in detail the securitization journey for each mortgage. Id. at *5. For example, the court described the patently absurd and almost Lewis Carroll-like process for the Ibanez loan as follows:

> In Ibanez, Lehman Brothers (as "Sponsor" and "Seller") purchased the loan from Option One (as the Originator). Lehman then sold it (with

hundreds of other loans that originated from Option One and other sources) to its wholly owned subsidiary, Structured Asset Securities Corporation (the "Depositor"). Structured Asset Securities Corporation subsequently sold the loans to the Structured Asset Securities Corporation Mortgage Loan Trust 2006-Z (with U.S. Bank as trustee)(the "Issuing Entity"), which then grouped them into a "pool" (the " *Ibanez* pool") and issued ten classes of certificates (two senior and eight subordinate) with varying rates of return, ranked in order of their payout priority in the event of shortfalls. Lehman purchased the certificates (presumably as the underwriter of the offering) and sold them in an offering to qualified investors. The loans in the *Ibanez* pool were administered by five "Servicers," one of which was Option One (now acting in a different capacity than Originator). Option One is alleged to be the Servicer for the *Ibanez* loan. These Servicers were supervised by Aurora Loan Services LLC (a wholly-owned Lehman subsidiary) (the "Master Servicer"). The loan documents themselves were kept by "Custodians"-Deutsche Bank, Wells Fargo, or U.S. Bank. [*Footnotes omitted*]

Ibanez, at *5.

39. After noting a similar pattern with the Larace loan, and noting that the loan in Ibanez had changed ownership at least four times and the loan in Larace at least three times, the court noted that due to deficiencies and recording problems with securitization and the MERS system, the various changes in ownership were essentially meaningless:

> [I]n Massachusetts, a mortgage is a conveyance of land. **Nothing is conveyed unless and until it is *validly* conveyed**. The various agreements between the securitization entities stating that each had a right to an assignment of the mortgage are *not themselves* an assignment and they are certainly not in recordable form. At best, the agreements gave those entities a right to bring an action to *get* an assignment. **But actually *holding* something and having only the *right* to be its holder are two very different things.** [*Footnotes omitted*]

Ibanez, at *11 (emphasis added).

## Parties/ Plaintiff

40. I, Scott J. Davidson, am the Plaintiff, and I am a private inhabitant living in California.

### Parties/ The Defendants

1

2    41. JP MORGAN CHASE BANK, NA is named as a defendant because they exercised

3    powers that they do not have and have taken actions in conjunction with local

4    government agencies such as the Santa Clara County Recorders Office to deprive me of

5    my private property in violation of the FAIR DEBT COLLECTION PRACTICES ACT,

6    Title 15 USC, Section 1692c, 1692d, 1692e, 1692f, 1692g and 1692i. Violations of the

7    FAIR DEBT COLLECTION PRACTICES ACT, Title 15 USC, Section 1692c, 1692d,

8
     1692e, 1692f, 1692g and 1692i occurred, in this context, when JP MORGAN CHASE
9
     BANK, NA prepared to foreclose on my property, even though they had no standing to do
10

11   so, since the note was sold to the mortgage-backed-security, and probably sold later to

12   another undisclosed-Third-Party-Note-Buyer, and under the subrogation doctrine

13   established by the US Supreme Court, neither the mortgage-backed-security nor an

14
     Undisclosed-Third-Party-Note-Buyer can foreclose. It appears that the notes are held by a
15
     mortgage-backed-security or some other financial institution, although it is impossible to
16

17   determine who is the actual-holder of the note, based upon the present circumstances

18   whereby the Defendants have engaged in deliberate fraudulent concealment. Please

19   review the following for affirmation that the right of subrogation does not exist for the

20   Defendants; Henningsen v. United States Fidelity & G. Co.; 208 US 404; 52 L. Ed 547,

21   28 S. Ct. 389; Prairie State National Bank v. United States; 164 US 227; 41 L. Ed. 412;

22   17 S. Ct. 142; Aetna L. Ins. Co. v. Middleport; 124 US 534; 31 L. Ed. 537; 8 S. Ct. 625;

23
     McBride v. McBride; 148 Or 478 36 P 2d 175. *AS A RESULT, THE DEFENDANT, JP*
24
     *MORGAN CHASE BANK, NA, HAS NO RIGHT, TITLE OR INTEREST IN THE LAND*
25

26   *AND HOME, WHICH IS THE SUBJECT OF THIS CIVIL ACTION, SINCE THE NOTE*

27   *HAS BEEN SOLD, AND THE UNDISCLOSED THIRD PARTY NOTE BUYER, (THE*

28

Complaint For Damages Page 26

"DEPOSITOR"), *DOES NOT HAVE THE RIGHT OF SUBROGATION TO THE ORIGINAL NOTE THAT THEY ALLEGEDLY PURCHASED AND THAT WAS ALLEGEDLY ASSIGNED TO THEM. THEY HAVE NO STANDING TO FORECLOSE ON MY PROPERTY.* See also 73 Am Jur Second, Section 90 which states that a right of subrogation does not exist for a mere volunteer, or some one who has not paid the entire mortgage debt in full. JP MORGAN CHASE BANK, NA is named as a Defendant in this matter because they appear to be acting in the capacity as a loan servicer and they have executed pre-foreclosure documents in preparation of a foreclosure without standing. WELLS FARGO BANK, NA is named because they claim to be a trustee of the REMIC called WAMU Mortgage Pass through Certificates, Series 2005-PR4 are acting as a claimant in this matter, even though they have not produced any material evidence that they or their principal have the original note in their possession with an indorsement as required under California Commercial Code and have violated Title 15 Section 1641(g) and Title 15, Sections 1692(c), 1692(d), 1692(e), 1692(f), 1692(g) and 1692(i) by failing to give notice of the assignment and by failing to comply with the various sections of California Commercial Code requiring that they have the note in their possession with an indorsement. Both NAIMAN LAW GROUP, PC and RANDALL D. NAIMAN are named as Defendants because they are part of the parade of agents, loan servicers, real estate agents, trustees and outside agents, who have acted on behalf of JP MORGAN CHASE BANK, NA and WELLS FARGO BANK, NA, as trustee of WAMU Mortgage Pass through Certificates, Series 2005-PR4 and has just recently filed an unlawful detainer case against the Plaintiff, in flagrant violation of the state and federal laws cited in this

1    case, including, but not limited to all of the sections of the Fair Debt Collection

2    Practices Act cited in this civil action. Recently, the U.S. Supreme Court has found

3    that law firms and attorneys may be held liable in civil actions under the Fair Debt

4    Collection Practices Act. (See, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich Lpa,*

5    *et al.,* 130 S. Ct. 1605; April 21, 2010).

6

7

8    42. The CALAVERAS COUNTY RECORDER has permitted JP MORGAN CHASE

9    BANK, NA to record documents that are unlawful for them to record, such as the notice

10   of Default, which is unlawful, because neither the Trustee nor JP MORGAN CHASE

11   BANK, NA has possession of the note, entered into with WASHINGTON MUTUAL

12   BANK, NA *see Matter of Staff Mortg. & Inv. Co., 550 F 2d 1228, (1977),* affirmed six

13   times by the Ninth Circuit Court of Appeals. Violations of the FAIR DEBT

14   COLLECTION PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e, 1692f,

15   1692g and 1692i are pursuant to the actions taken by the Defendants when JP MORGAN

16   CHASE BANK, NA recorded said documents at the County Recorders Office without

17

18   standing.

19

20   43. The fact that The Mortgage-Backed-Security or Undisclosed-Third-Party-Note-Buyer

21   did not pay the entire mortgage debt in full and is not secondarily liable is unrebutted and

22   is therefore a fact undisputed and agreed to by the Defendants. These Defendants are

23   attempting to deprive me of my right to use and ownership of my land and home, in

24   violation of the FAIR DEBT COLLECTION PRACTICES ACT, Title 15 USC, Section

25   1692c, 1692d, 1692e, 1692f, 1692g and 1692i, by foreclosing without standing and

26

27

28

Complaint For Damages Page 28

without having properly recorded the Assignment of Deed of Trust as required under California Civil Code 2932.5.

## II. SECURITIZATION OF MORTGAGE LOANS INCLUDING PLAINTIFF

44. Securitization is intentionally complex and the details and even some of the mathematical calculations involved cannot be succinctly set forth in a complaint.

45. As set forth in the Investor Cases, the securities that the Securitizers sold are so called asset-backed securities, or ABS, created in a process known as securitization. More specifically, they involved a complex financial instrument product known generically in the securities industry as collaterized debt obligations ("CDOs"). "Synthetic" CDOs are even more complex instruments that are "derivates" based only indirectly on the CDOs (i.e., Credit Default Swaps).

46. Securitization begins with the sale of bonds to Investors (usually they are sold "forward" meaning they are sold to the investors before the Investors' funds are given to mortgage borrowers such as the Plaintiff). Only some of the funds were then used to fund loans such as Plaintiff's. Investors were led to believe all of their funds except for reasonable fees were forwarded, but this was false.

47. The entities involved in making the loans are known as the Originators. The process by which the Originators decide whether or not to make particular loans is known as the underwriting of loans. Plaintiff is informed and believes that during the loan

underwriting process, representations were made to the Investors that the originators would apply various criteria to try to ensure that the loan will be repaid. However, they did not do so and instead, the way the securitization scheme was structured, it was actually in the best interests of the "Securitizers" (including Originators) for the loans to fail. They were clearly not acting with the interests of the Plaintiff or the Investors in mind.

48. Until the loans are securitized, the borrowers on the loans sometimes make their loan payments to an Originator, but this may never occur or only be for a very short time. Collectively, the payments on the loans are known as the cash flow from the loans.

49. A large number of loans, usually of a similar type, are grouped into a collateral pool. The Originator of those loans claims it sells them (and, with them, the right to receive the cash flow from them) to a special purpose vehicle called a trust by the Securitizers. The trust is supposed to pay the Originator cash for the loans. As mentioned, the trust raises the cash to pay for the loans by selling bonds, in the form of certificates, to Investors. Each certificate purportedly entitles its holder to an agreed part of the cash flow from the loans in the collateral pool.

50. There are tranches of investment bonds sold. Typically, "Tranche A" is a veneer of conventional mortgages where the borrowers appear creditworthy. ("Tranche" is a French word for "slice". A tranche is a piece, portion, or slice of a deal or structured financing. Different tranches have different risks, rewards, and/or maturities.) Other tranches had much less credit worthy borrowers. Using the credit worthy

borrowers, the Securitizers obtained ratings on the bonds that were inaccurate at best. It has now become public knowledge that Securitizers conspired with the rating agencies to mislead investors. Thus, schematically, these are some of the steps in a securitization in no specific order:

a. Investments are created for Investors usually in the form of Bonds.

b. Credit Enhancements are obtained.

c. Rating agencies are provided misleading information and paid to rate the Bonds as "safe" and provide misleading information.

d. Investors pay money to the trust.

e. The trust issues certificates to the Investors.

f. The trust pays money to the parties up the chain toward the borrower/property owner through the Originators.

g. Only part of the funds are used to fund mortgage loans such as the one made to Plaintiff.

h. The rest of the money is kept by the Originators and Securitizers in the scheme. In other words, by way of example, the Investors might think they are funding a loan for $1 million, however, only $500,000 is actually loaned to borrowers such as the Plaintiff, and the Securitizers keep the rest through a complex series of transactions.

i. The Originator and Securitizers plan in advance for the loans to default.

j. Loans made to persons like Plaintiff are placed into one or more pools.

k. The Originator was supposed to assign to the trust the loans, which were placed into a collateral pool, including the right to receive the cash flow from those loans, but a proper assignment/transfer was never done.

l. The trust is supposed to collect cash flow from payments on the loans in the collateral pool; however it has no legal right to do so even under the lengthy, complex documents used in securitization.

m. When the mortgage loans go into default, the Securitizers demand that payment be made to the Investors by the "credit enhancements."

n. In "Credit Default Swaps" the Securitizers also placed "bets" that the loans would not pay off (as was planned), in order to cover the difference between what was loaned to borrowers such as Plaintiff and what was funded by the Investors and make another hidden profit for the Securitizers. According to some published reports, these unregistered securities were frequently more than 30 times the principal on the mortgage loans (such as Plaintiff's.) Thus, if the borrowers such as the Plaintiff, did not perform on the loans, the Securitizers would make more money than if they did.

o. After default, even though the mortgage loan is technically paid in full if a proper accounting were done, the Securitizers pretend the loan is still owed by the borrowers such as the Plaintiff, to the original named "beneficiary" on the deed of trust, and try to foreclose on the mortgage and steal the mortgaged real property from borrowers such as the Plaintiff.

p. Securitizers hire law firms such as Defendants who know or should know that the collection of loans such as the Subject Loan is improper and routinely conceal information concerning such to the courts. (See, *In Re Nosek*, 406 B.R. 434.)

51. Recently, the U.S. Supreme Court has found that these law firms may be held liable in class actions under the Fair Debt Collection Practices Act. (See, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich Lpa, et al.,* 130 S. Ct. 1605; April 21, 2010).

52. At the risk of being redundant, but also more specific and adding that the taxpayers are paying for this, the order of things is usually as follows:

• The first transactions that occurred were the sale of securities to unsuspecting investors.

• The second transaction that occurred was that the investor money was put into an account at an investment banking firm.

• The third transaction was that the investment banker divided the money between fees for itself and then distributing the funds to aggregators or a Depository Institution.

• The fourth transaction was the closing with the borrower. The trust fund was funded with the money from the investor after deducting large undisclosed fees and also because of the disparity between the interest payable to the investor and the interest payable by the borrower, a yield spread was created, adding huge sums to what the investment banker took without disclosure to the investors or the borrowers.

• The fifth was the assignment and acceptance of the loan generally into between 1 and 3 asset pools, each bearing distinctive language describing the pool such that they appeared to be different assets than already presumed to exist in the first pool.

• The sixth was the receipt of insurance or counter-party payments on behalf of the pool pursuant to the documents creating the securitization structure.

• The seventh was the resecuritization of the pooled assets between one and

three times.

• The eighth was the federal bailout payments and receipts allocable to the balances owed on the loans that were claimed to be part of the pool.

• The ninth are the foreclosures by parties who never provided any money which is often the original named beneficiary on the trust deed.

• In the alternative fraudulent and forged assignments allegedly represent investors, and these practices are currently, in many cases, the subject of criminal investigations.

• Lastly, attorneys are hired to evict the homeowners such as Plaintiff.

• After eviction, the house is sold and no one knows at this point where the proceeds from the sales go.

• It is unlikely it goes back to the government, which has at least indirectly funded all this through "bail outs".

53. Securitization involves many documents. In broad brush, it involves the closing documents between loan Originators, Servicers, Special Purpose Vehicles, Aggregators, etc. including the Pooling and Service Agreements, the Assignment and Assumption Agreements, the Master Service Agreements [if separate]. None of these include the borrower as party or references any specific debtor or borrower because the debtor is unknown when the securitization structure is created.

54. Each securitization has a Sponsor, a prime mover of the securitization. Sometimes the sponsor is the Originator or an affiliate. In Originator-sponsored securitizations, the collateral pool usually contains loans made by the Investors.

Sometimes, the Sponsor may be an investment bank.

55. The two important documents in the mortgage loan made to the home owner/borrower are the promissory note and the mortgage (usually a deed of trust as in Plaintiff's loan in California).

56. The Sponsor is supposed to arrange for title to the mortgage loans to be transferred to an entity known as the depositor, which then was supposed to transfer title to the loans to the trust.

57. As mentioned, the assignment of the mortgages never properly occurred and this is the subject of countless lawsuits by the borrowers such as the Plaintiff.

58. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected. The trust is a mere conduit that has no power to do anything, and has no real trustee.

59. The Pooling and Service Agreements provide certain time deadlines by which transfers were to be made, and these were not met.

60. When a trust has no assets it cannot satisfy the liabilities of an issuer of securities (the certificates). According to the Investor Cases, the law therefore treats the depositor as the issuer of an asset-backed certificate.

61. According to the Investor Cases, securities dealers, represented that they would underwrite the sale of the certificates. Most important, securities underwriters provided to potential investors, the information they need to decide whether to purchase the certificates.

62. Because the cash flow from the loans in the collateral pool of a securitization is purportedly the source of funds to pay the holders of the certificates issued by the trust, the credit quality of those certificates, if this were true, would be dependent upon the credit quality of the loans in the collateral pool. According to the Investor Cases, the most important information about the credit quality of those loans is contained in the files that the Originator develops while making the loans, the so-called loan files. For residential mortgage loans, each loan file normally contains the information in such important documents as the borrower's application for the loan, credit reports on the borrower, and an appraisal of the property that will secure the loan.

63. This is the point where the Mortgage Electronic Registration System ("MERS") became a part of the scheme, which is itself, subject to countless lawsuits including class actions. Recently, Fannie Mae issued new rules stating the MERS has no authority concerning its loans.

64. Collateral pools usually include thousands of loans. Instead of potential investors individually reviewing thousands of loan files, the securities firms that would underwrite the sale of the certificates in a securitization were supposedly responsible for gathering, verifying, and presenting to potential investors the information about the credit quality of

1    the loans that will be deposited into the trust.

2

3    65. As was alleged in the Investor Cases, the Securitizers sold to the Investors

4    certificates in securitizations the information that was presented to Investors contained

5    many false statements that were material to the mortgage/loan transactions.

6

7    66. I, Scott J. Davidson, the Plaintiff, rely upon Haines v. Kerner, 404 US 519 (1972),

8    and do hereby and herein object to the following alleged Creditor's Claim of JP

9    MORGAN CHASE BANK, NA, based upon the foregoing:

10

11

12                          **FIRST CAUSE OF ACTION**

13    **QUIET TITLE AND VIOLATION OF THE FDCPA, 15 U.S.C. § 1692 and Title 15,**

14    **Section 1641(g) (Against Defendants, and Other Loan Servicers Acting As Debt**

15                    **Collectors to Be Alleged By Amendment)**

16

17

18    67. Plaintiff repeats and re-alleges each and every allegation contained in the above

19    paragraphs.

20

21    68. Defendants have concealed the roles of the parties and Plaintiff is unsure who

22    the other "debt collectors" of the loans are. Plaintiff will amend this complaint when the

23    appropriate parties who were debt collectors are discovered.

24

25

26    69. Federal law prohibits the use of "any false, deceptive or misleading representation or

27

28

means in connection with the collection of any debt..." Title 15 USC, Section 1692e.

70. In foreclosing on Plaintiff's home, and prosecuting the subsequent unlawful

detainers, the debt collector Defendants:

a. Made false, deceptive and misleading representation concerning their

standing to sue the Plaintiff and the interest in the debt;

b. Falsely represented the status of the debt, in particular, that it was due and

owing by Plaintiff to defendants at the time an eviction suit was filed;

c. Falsely represented or implied that the debt was owing to defendants as an

innocent purchaser for value, when in fact, such assignment had not been

accomplished;

d. Threatened to take action, namely engaging in collection activities and

collection and foreclosure proceedings as trustees that cannot legally be

taken by them, and

e. Threatened to obtain access to state courts to evict Plaintiff, under false

pretenses, namely, that Defendants were duly authorized to engage in

such activities when in fact they were not, and

f. In the case of Purchasers Law Firms, they knew or should have known they did not

acquire proper title and are planning to proceed with eviction proceedings against

Plaintiff homeowner anyway. The Defendants knew that they received TARP money

AND THEY KNEW THAT THEY RECEIVED payment from credit enhancements, such

as credit default swaps and mortgage insurance, which means that the Defendants are

attempting to obtain double recovery.

71. Defendants did not, and cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiff at this time as it would violate the "Pooling and Service Agreements" used in securitization. These Defendant is attempting to deprive me of my rights to use and ownership of my land and home, in violation of the FAIR DEBT COLLECTION PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e, 1692f, 1692g, 1692i, by foreclosing without standing and without having recorded the Assignment-of-Deed-of-Trust, with a proper acknowledgement, as required under California Civil Code 2932.5, which is an absolute requirement and a prerequisite for taking actions to foreclose and sell the subject property pursuant to California Civil Code 2932.5.

72. Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiff residences contained false statements. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies.

73. In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

74. The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

1

2   75. Plaintiff is entitled to recover equitable relief, statutory damages, actual damages,

3   reasonable attorney's fees, and costs.

4

5   76. The defendants do not have a security interest in my property because of the lack of

6   the right of subrogation.  They claim that The Mortgage-Backed-Security or an

7   undisclosed Third-Party-Note-Buyer's purchase of the note from the original lender forms

8   the foundation of their authority to take my land and home by a foreclosure action. There

9   is no right of subrogation for the Mortgage-Backed-Security or any other party, because,

10  on information and belief, they have purchased the original note as a stranger to the

11  transaction and as someone who is a mere volunteer and not secondarily liable. If the

12  Defendant denies that they are the holder of the note, without revealing who the note

13  holder is, or fail to bring forward the original promissory note, then they still are

14  representing a party who does not have the right of subrogation. Additionally, there is no

15  valuable consideration, since only Federal Reserve Notes were received, which are not

16  backed by any hard-asset of the bank or anything, which has any redemption value. I do

17

18  not remember ever signing over a security interest, based upon valuable consideration to

19  the defendants or anyone else.

20

21

22  77.  The mortgage-backed-security or an undisclosed-third-party-note-buyer is acting

23  through an agent, the Defendant, JP MORGAN CHASE BANK, NA, since they

24  purchased the original note for an undisclosed amount, even though they were not a co-

25  signer on the original note, thus they did not have the right of subrogation. As a result of

26  the original lender having sold the original note, and as a result of the fact that the note-

27

28

Complaint For Damages Page 40

buyer does not have the right of subrogation, the mortgage-backed-security or an undisclosed-note-buyer, is a stranger to the transaction and has no right, title, estate or interest to my land and home.

78. ANY FORECLOSURE ACTION BY THE DEFENDANTS is unenforceable and void ab intio, from the beginning. **The Defendant, has a duty, as an alleged creditor to prove that they have a right of subrogation if either they or their principal, an undisclosed-third-party-note-buyer, is a co-signer, and prove that they are a co-signer, if in fact they are, and additionally prove that they have paid the entire debt in full, prior to taking steps to foreclose on my property, the land and home, which is the subject of this civil action.** The Defendant JP MORGAN CHASE BANK, NA and their principal, did not do this, and by their failure to prove that either the above named Defendants or their undisclosed-third-party-note-buyer is a co-signer on the original notes and by their failure to prove that said undisclosed-third-party-note-buyer has paid the entire mortgage debt in full, they have failed to perform a duty, which they are required to perform under California law. My loan documents were signed in August of 2005 and is part of that investment fund which, if the identity of the note-buyer were fully disclosed, can be found on the SEC website called "EDGAR". Thus the mortgage and note for my property was part of a pooling and servicing agreement whereby investors purchased the mortgage and note from WASHINGTON MUTUAL BANK, FA through their investment corporation, placing the note into a trust with thousands of other notes.

79. "Subrogation in equity is confined to the relation of principal and surety and guarantors, to cases where a person to protect his own junior lien is compelled to remove

one which is superior, and to cases of insurance....Anyone who is under no legal

obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere

volunteer.". (emphasis mine) <u>Aetna Life v. Middleport</u>, 124 US 534, quoting <u>Suppiger v.</u>

<u>Garrels</u>, 20 Bradwell App Ill. 625. The defendants, and all of them, including JP

MORGAN CHASE BANK, NA or any principal, such as a Mortgage Backed Security (or

some other undisclosed Third Party Note Buyer, if the notes were resold), were clearly

never cosigners or sureties on the original Promissory note. Attorneys have an auxiliary

role to play in this matter, assisting JP MORGAN CHASE BANK, NA and their

principals and agents in their unlawful activities, by sending out demands for payment

and preparing to file an eviction lawsuit in California courts knowing that they do not

have the right of subrogation as a stranger to the transaction. The undisclosed-third-party-

note-buyer has never had any right, title or interest in the subject property as a stranger to

the transaction.

80. The Defendant and their agents and principals violated my rights under the FAIR

DEBT COLLECTION PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e,

1692f, 1692g, 1692i, by presenting themselves as a party who has a right to enforce the

original note, although their undisclosed-third-party-note-buyer clearly is not now, nor

have they ever been a co-signer on the original-note. Because the undisclosed-third-party-

note buyer has no right of subrogation, they have no right to enforce the note, and thereby

no right to foreclose or to claim any right, title or interest in the subject property. I have a

right to expect that anyone who is attempting to foreclose on the subject property has the

right to do so as someone who has standing. Based upon information and belief, the

Defendant clearly has never had standing to foreclose, and based upon the above analysis

and facts. Please note that the Defendants and all of them, including, JP MORGAN CHASE BANK, NA have never claimed that their mortgage-backed-security (their undisclosed-third-party-note buyer) has the right of subrogation. They have never brought forward evidence that refutes, rebuts, challenges or denies my statement of fact in my constructive notice, that the Defendant, JP MORGAN CHASE BANK, NA and their principal, The Mortgage-Backed-Security (or an undisclosed-third-party-note-buyer), does not have the right of subrogation and the evidence is that they are not a co-signer. Federal courts are bound by the US Constitution and laws passed in pursuance thereof, including the FIFTH AND FOURTEENTH AMENDMENTS TO THE US CONSTITUTION.

81. When there is fraud involved, then any action that flows from that fraud is null and void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio,* **out of fraud no action arises.** Additionally, if this is true the Defendants are liable for fraud, fraudulent conversion and attempted theft of private-property. This claim of ownership of my home and land without a judicial trial by the jury, and without due process of law, access to an appeals process, a final judgment by a court, is a violation of the rules of the common law and the FAIR DEBT COLLECTION PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e, 1692f, 1692g, 1692i and similar provisions under state law. The fraud has occurred numerous times by way of correspondence and phone calls from the Defendants and their agents over the last one year, during the year 2010, where they attempted to mislead me into believing that I owed them money and they had a lawful claim to enforce the note, even though they did not because JP MORGAN CHASE BANK, NA, while acting on behalf of their undisclosed note buyer, the mortgage-backed-

security (or undisclosed-third-party-note-buyer) does not have the right of subrogation as a stranger to the transaction. Please see **Exhibit G**, recorded on January 20, 2011, and is attached, and incorporated by reference, a copy of a Notice of Default, which states on page one at Paragraph one, that the Defendants and their agents and principals have the power to foreclose "YOUR PROPERTY….. MAY BE SOLD WITHOUT ANY COURT ACTION…." and that I have to pay the past due amounts, even though they have not complied with all of the requirements under uniform commercial code for possession of an endorsed note and requirements to litigate title, and California Civil Code Section 2924, requiring that the lender obtain a court order from a court of record prior to selling or transferring the subject property in a foreclosure sale pursuant to Section 2924 of the Civil Code, and even though they do not have possession of the note, and do not have standing to foreclose and their principal, the undisclosed-third-party-note-buyer, does not have standing to sue for foreclosure as a stranger to the transaction. Also, the Notice-of-Default is fraudulent because it asks for a payment, even though the full amount of the debt was paid when the original lender rubber stamped the words "pay to the order of" and deposited the promissory notes into a checking account in my name without full disclosure, see **Exhibit H**, page Six, right hand paragraph #2, and Page Seven, Modern Money Mechanics, a publication issued by the Federal Reserve Bank of Chicago. In addition, the Defendants were paid when they collected on insurance products such as credit default swaps. And now with the foreclosure process they attempt double recovery.

82. The most intense and deliberate acts of fraud occurred in the months of January through December of 2010 by way of written and telephonic communications, threatening to foreclose, when the Defendant was preparing to sell my home on the courthouse steps,

even though the Defendants and all of them lack standing as strangers to the transaction. One letter, the notice of default, was recorded on January 20, 2011, attached as **Exhibit G**, which states, in the first and second paragraph on page 1 that my property is in foreclosure and the subject property may be sold without any court action. The entire document is filled with false and misleading statements but the last paragraph is designed to mislead me into believing that I owe money to the alleged beneficiary or trustee and that my only option is to pay the debt and that the alleged beneficiary is empowered and has the standing to foreclose. The Defendants and their agents, through the above described document, are engaged in a willful and deliberate act of making false and misleading statements designed to mislead me and make me rely on their statements to my detriment, so I will be influenced by their written communications to take actions that are detrimental to me, whereby I either pay money for payment of the note and deed of trust to someone who does not have the right of subrogation as a stranger to the transaction and someone who does not have the original note in their possession, and thereby lacks standing, or else I abandon the subject property to a party who has no right of subrogation and has no standing to foreclose and no standing to enforce the note.

83. These are false choices. The other statement made by the Defendants agent in paragraphs 1 and 2 of **Exhibit G** is that they have the right to foreclose without a judicial process. This statement is false and misleading and designed to induce and mislead me and make me take actions to my detriment, such as abandoning the subject property, because the alleged creditor is required to obtain a judgment from a court of record prior to selling the subject property pursuant to California Civil Code Section 2924 as previously discussed.

84. To understand fraud I must take into account the case of <u>McNally v. U.S.</u>, 483 U.S. 350, 371-372, Quoting U.S. v Holzer, 816 F.2d. 304, at 307. Fraud in its elementary common law sense of deceit includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, and if he deliberately conceals material information from them he is guilty of fraud. "Silence activates estoppel" Carmine v. Bowen, 64 A. 932.

85. "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading." <u>U.S. v. Tweel</u>, 550 F.2d 297. "Fraud vitiates even the most solemn promise to pay", see U.S. vs. Throckmorton, 98 U.S. 61, 65.

86. The Fifth Amendment to our Federal Constitution of 1787, and similar provisions of the California Constitution, guarantees <u>that no person shall be deprived of life, liberty or property without due process of law</u>. I, Scott J. Davidson, the Plaintiff, do not recall ever having been given a summons or subpoena or other lawful notice requiring my presence in court in a Quiet Title Action. I do not recall ever having been to court over this matter in a Quiet Title Action. I do not recall a trial by the jury, final judgment, access to the appeals process or having seen a court order regarding a determination of Title in an action to Quiet Title. Article Three of the Constitution for the United States of America and Constitution of the United States provides for jurisdiction under the rules of the common law, see <u>Callan v. Wilson</u>, 127 US 540. The Seventh Amendment to our federal constitution guarantees jurisdiction under the course of the common law. The defendant's

actions are not the result of a common law ruling and due process in a court of law, "The

7th Amendment to the Constitution preserves the right of trial by jury in suits at common

law involving more than $20, and provides that no fact tried by a jury, shall be reviewed

otherwise than according to the rules of the common law.", see 443 Cans of Frozen Egg

Product v. United States of America; 226 US 172.

87. The defendant has failed to prove or show a court order authorizing private property

to be liened, levied or seized based upon a determination of title in an Action to Quiet

Title as required under the rules of the common law, and the due process clauses in the

Fifth and Fourteenth Amendments, and pursuant to the Seventh Amendment to the US

Constitution, as discussed previously, mandating a court order be obtained prior to a

foreclosure sale. The Defendants have used the organs and institutions of government to

seek to obtain fraudulent title to the subject property and have held a foreclosure sale,

without standing and without due process of law, and without a trial by the jury under the

rules of the common law. The common law right of due process is found in the Fifth, and

Fourteenth Amendments to our Federal Constitution. Violations of the FAIR DEBT

COLLECTION PRACTICES ACT have occurred at Title 15 USC, Section 1692c, 1692d,

1692e, 1692f, 1692g, and 1692i when they do not have standing and that that foreclosure

involves the use of the organs and instrumentalities of government agencies such as the

Sheriff or the County Recorder.

88. The actions taken by the defendant, attempt to deprive me of my liberty and property

without due process of law. Article Three of the original constitution for the united States

of America calls for either law courts, see Callan v. Wilson, 127 U.S. 540, (1888) "And

as the guaranty of a trial by jury, in the third article, implied a trial in that mode, **and according to the settled rules of common law"**. See also Commentaries on the Constitution by Joseph Story, Volume III, Pages 506-507. Actions by the Defendant to claim to have a security interest in my private land and home and personal property and claim authority to hold a foreclosure sale is an action beyond the scope of their authority as a stranger to the transaction, and as a party who has not brought a suit against me under common law to litigate title. This is described by the United States Supreme Court as tyranny in; United States v. Lee; 106 US 196, 1S. Ct. 240 (1882) where the United States claimed ownership of property via a tax sale some years earlier, the court made the statements found below.

89. "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest are creatures of the law and are bound to obey it. It is the only supreme power of our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives...... Shall it be said ... that the courts cannot give remedy when the citizen has been deprived of his liberty by force, his estate seized and converted to the use of the government without any lawful authority, without any process of law, and without any compensation, because the president has ordered it and his officers are in possession? If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights." In US v. Lee, supra, the

government can be considered as similar and applying in like manner as the defendants in the above captioned case. If government agencies cannot take private property without due process of law, how can a bank or mortgage company do so?

90. The Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in <u>Lynch v. Household Finance Corp.</u>; 405 US 538 (1972);

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a "personal" right whether the "property" in question be a welfare check, a home, or a savings account. In fact a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized. J. Locke Of Civil Government 82-85(1924); J. Adams A Defense of the Constitutions of Government of the United States of America, in F. Coker Democracy, Liberty and Property 121-132 (1942); 1 W. Blackstone, Commentaries 138-140."

91. The taking of private property without due process is clearly a violation of civil liberties as well as personal rights. One of the settled principles of our Constitution is that these Amendments are to protect only against invasion of civil liberties by the government whose conduct they alone limit. <u>Burdeau v. McDowell</u> ; 256 US 465, 41 S. Ct. 574, 65 L Ed. 104813 ALR 1159 (1921); <u>Weeks v. United States</u>; 232 US 383, 34 S.

Ct. 341, 58 L. Ed. 652, (1914);Hall v. United States; 41, F 2d 54(9th Cir. 1930); Brown v.

United States; 12 F 2d. 926 (9th Cir. 1926). Therefore the organs of government cannot

be used to participate and assist in the unlawful plunder of my private allodial property.

As a result of the foregoing failure to show that the Defendant JP MORGAN CHASE

BANK, NA is in possession of the note with an endorsed note as required under

California Commercial Code 3203, 3204 and 3205 and show the chain of title of the note,

the actions complained of here, are a violation of the due process clauses of the Fifth and

Fourteenth Amendments to the US Constitution. The lack of standing and failure to

establish ratification of commencement under FRCP Section 17(a) amount to a violation

of the due process clauses in the Fifth and Fourteenth Amendments to the US

Constitution.

**The Defendant cannot foreclose without a Judicial Determination of The**

**Status of The Defendant as The Owner in a Court of Common Law and by Way of**

**A Quiet Title Action.**

92. The Defendant, by their action, is attempting to force me out of the subject property

without due process of law. Pursuant to the rules of the common law, the Defendant does

not have the right to foreclose. The Defendant clearly violated California law when they

threatened foreclosure proceedings, since California is bound by the US Constitution and

because California Civil Code Section 2924 requires the creditor to obtain a court order

from a court of record prior to foreclosure. Pursuant to the Fifth Article of Amendment to

our Federal Constitution, the Defendant cannot seek to obtain non-judicial remedies to

obtain title, thereby claiming to have a 'perfected title', and thereby circumventing the

due process requirements as guaranteed under the Fifth Amendment, by way of the Fourteenth Amendment. A quiet title action must be adjudicated prior to any foreclosure action taken or being tried in court, pursuant to the Seventh Amendment to the US Constitution.

93. The unlawful action taken by the Defendant was not preceded by a final judgment in an Action to Quiet Title, and is therefore violative of my due process rights, see the Fifth and Seventh Amendment to the US Constitution. The US Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972). This case is similar and analogous to the Lynch case, referenced above, because property is going to be seized without judicial due process. **The Defendant is proceeding as if rights were waived. I have never waived any rights in this matter, knowingly, intelligently or voluntarily, including my right to judicial due process.** Please see Brady v US; 397 US 742 at 748 for confirmation that rights must be waived knowingly, intelligently and voluntarily.

94. The outcome of this case will determine the ownership of the subject property and the validity of the claims of the parties. The foreclosure action taken by the Defendant lacks personal and subject matter jurisdiction because of: 1.) the misrepresentation of material facts by the Defendant *that they have the right to foreclose* 2.) the failure and refusal by the Defendant, JP MORGAN CHASE BANK, NA to produce the original note, 3.) the fact that the attempted seizure of the private property in question is not lawful because it violates the doctrine of due process established by California Common Law and by the US Supreme Court in Lynch v Household Finance, supra, by skipping and circumventing

the requirement to file an Action to Quiet Title under common law to determine with certainty who has title to the property, as required under the Seventh Amendment to the US Constitution and 4.) it violates my due process rights as Plaintiff in this Quiet Title Action.

95. The original lender deposited the said promissory note, the loan amount, in an account as an asset to fund the loan, without full disclosure. This act violated generally Accepted Accounting Principles (GAAP), since that system of bookkeeping is used by all of the banks, and requires that every asset be balanced and offset by a liability. See **Exhibit H**, Modern Money Mechanics, 1994, Federal Reserve Bank of Chicago, Page 6, Right Hand Column Second Paragraph, which states that the banks accept promissory notes in exchange for credits to the borrowers transaction account. This proves that the banks are creating a mutual loan between the lender and the borrower.

96. Title 12 US Code, Section 248 and 347, require the 2046 balance sheet as it relates to the ledgering of the original loan account and will show extinguishment of the loan, and this must be filed pursuant to Title 12 USC, Sections 248 and 347. Form S 3, is a registration statement filed with the SEC and must be filed whenever the original note is sold. The SEC also requires the filing of a Form 424 B-5 Prospectus, and 425 B, which also shows the bundling of notes for delivery into a REMIC (Real Estate Mortgage Investment Conduit). See also IRS Publication 938. The Financial Accounting Standards Board has established standards for accounting regarding notes, including FAS 125, 133, 140, 5 and 95, which will show the liability side of the bank's books and will create a trail of exactly where the money came from and where it went and will confirm, in discovery,

the legal theory advanced in this action to quiet title. Title 12, USC Section 1813 (L)(1) states that when the bank deposits a promissory note it becomes a cash item to the bank and is ledgered as an asset on their books, and the bank was supposed to provide a receipt for it, which was not done. The banks bundle, securitize and sell the notes to a REMIC, often without disclosure to the borrower.

97. When the original lender processed the original notes they countersigned the notes with a stamp that says "pay to the order of" and 'without recourse', Please see **Exhibit I**. This act of countersigning the notes with an endorsement changed the terms of the loan, without full disclosure, and altered the notes, with an endorsement, which is a violation of Federal Law; the National Banking Act of 1864, Section 27, which states as follows:

"And be it further enacted, that it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any Association, or to any other company or person, any circulating notes contemplated by this act, except as hereinbefore provided, and in accordance with the intent and meaning of this act. And any officer who shall violate the provisions of this section, shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one years year and not greater than fifteen years, at the discretion of the court at which he shall be tried."

98. The Defendant JP MORGAN CHASE BANK, NA has been attempting to acquire my home in a foreclosure in violation of *13 STAT 107-108, Section 28 of the National Banking Act, which prohibits the holding of real estate by banks.*

99. The use of federal Reserve notes is a violation of Section 23 of the National Banking Act, which states: "And no such association shall issue post notes or any other notes to circulate as money than such as are authorized by the forgoing provisions of this act." *13 STAT 106, Section 23.* In addition, the failure to have lawful money of the United States, is a violation of *13 STAT 109, Section 31, and cause a bank to be shut down.*

100. The Defendant, JP MORGAN CHASE BANK, NA, listed the promissory note as an asset of the lender, without also listing it as a liability of the lender, as is customary when a paycheck or cash is deposited. This act of endorsement of the promissory notes without full disclosure was a defect in the bookkeeping records. The Defendant based their claim upon a mortgage contract (Deed of Trust), which is in its very nature fraudulent. There is no valuable consideration in the existing mortgage contract, because there was nothing of intrinsic value loaned in the agreement. The original lender loaned Federal Reserve notes, which are commercial paper pursuant to a decision by the United States Supreme Court, see <u>Clearfield Trust Company v US;</u> 318 US 363. The note and mortgage indenture, violates Article One, Section Ten of the US Constitution and the Constitution for the united States of America. The note and mortgage indenture, violates The Coinage Act of 1792. In the united States of America, no state can make anything but gold and silver coin a tender in payment of debt, see Federal Const. Art. 1 Sec.10. Gold and silver coin has intrinsic value, and is exclusively lawful money in the united States of America. The

1  Mortgage contract (note and deed of trust) did not provide for the loaning of gold and

2  silver coin, and did not provide for the repayment of the debt in gold and silver coin, as

3  required under our Federal Constitution, Art. 1, Sec. 10, and is, therefore, not a lawful

4  contract, because something other than gold and silver coin was made a tender in

5  payment of debt.  The mortgage contract, note and deed of trust is unconstitutional, see

6  Woodruff v. Mississippi; 162 US 291;16 S. Ct. 820; 40 L. Ed. 973; Julliard v Greenman;

7  110 US 421, at 447, 4 S Ct. 122, 28 L. Ed. 204, See also Knox v Lee; 79 US (12 Wall

8  457, 20 L. Ed 287. *See also the definition of* Lawful Money, *Webster's New International*

9  *Dictionary* (2d ed. 1950).

10

11

12  101. The collection of this alleged debt is unconstitutional, see Julliard v Greenman; 110

13  US 421, at 447, 4 S Ct. 122, 28 L. Ed. 204, See also Knox v Lee; 79 US (12 Wall 457),

14  20 L. Ed 287; Woodruff v. Mississippi, 162 US 291, which states; " ***For the power to***

15  ***borrow money, simply meant the power to borrow whatever was money according to***

16  ***the Constitution of the United States and the laws passed in pursuance thereof***, and the

17  power to issue negotiable bonds therefore included the power to make them payable in

18  such money. This the law presumed, **and to proceed on an implication to the contrary**

19  **was to deny to the holders of these bonds, subsequent to their purchase, a right**

20  **arising under the Constitution and laws of the United States**." (Emphasis added.) In

21  two of the above cases, the US Supreme Court stated that the use of paper money was

22  acceptable under the above-cited sections of the US Constitution, because the currency at

23  the time of these rulings was backed by silver and gold coins. Woodruff v. Mississippi,

24  and Article One, Section Ten of the US Constitution must be held as valid in this matter

25

26

27

28

Complaint For Damages Page 55

as the supreme law of the land, <u>since the court is required to be faithful to the law and</u> <u>cannot engage in judicial nullification.</u>

102. The Defendant Cannot Validate the Debt, Therefore the obligation is extinguished, and any claim to the Plaintiff's land and home is void. The Defendant's agents and debt collectors failed to validate and verify the debt in accordance with the Fair Debt Collection Practices Act Title 15 USC, § 1692(g) and numerous sections of the Uniform Commercial Code, all of which are a reflection of the rules of the common law. In my constructive notice I offered to pay the Defendant's agents if they would validate the debt and demonstrate that they have the right of subrogation. They have failed to respond to my constructive notice and are, therefore in default on my offer. As a result of the foregoing the obligation is extinguished, see <u>Walker v. Houston</u>; 215 Cal 742; 12 P2d 953 at 953, 87 A.L.R. 937.

103. The Defendant in this matter has not responded to my request to validate the debt as required in the Qualified Written Request, therefore the obligation is extinguished, **See Exhibit G.** Please note the Defendant claims that they have the right to foreclose, however, the right of subrogation does not exist for the Defendant, as a stranger to the transaction, pursuant to the case law below; see 73 Am Jur Second, Section 90 which states that a right of subrogation does not exist for a mere volunteer, or someone who has not paid the entire mortgage debt in full. Please review the following for affirmation that the right of subrogation does not exist for the Defendants; <u>Henningsen  v. United States</u> <u>Fidelity & G. Co</u>; Supra; <u>Prairie State National Bank v. United States</u>; Supra ; <u>Aetna L.</u> <u>Ins. Co. v. v. Middleport</u>; Supra; <u>McBride v. McBride</u>; Supra. *AS A RESULT OF THE*

*FOREGOING US SUPREME COURT RULINGS, THE DEFENDANT DOES NOT HAVE THE AUTHORITY TO FORECLOSE BECAUSE THEIR UNDISCLOSED THIRD PARTY NOTE BUYER DOES NOT HAVE THE RIGHT OF SUBROGATION. ALSO, THEY CANNOT VALIDATE THE DEBT BECAUSE THEY ARE NOT THE HOLDER OF THE NOTE AND CANNOT ENFORCE THE NOTE THAT THEY CLAIM TO HAVE PURCHASED FROM THE ORIGINAL LENDER.*

104. In addition, the Defendant never proved that the full amount of the mortgage was paid by the note buyer, further amplifying the fact that a right of subrogation does not exist. In most cases the mortgage companies and banks sell the notes to each other for pennies on the dollar, meaning that they do not pay the entire mortgage debt in full, thereby providing another reason why they do not have the right of subrogation.

105. **The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603.**

106. The Qualified Written Request, see **Exhibit G** is a request for debt validation, and is also an offer of performance, which has not been answered, making the debt unenforceable under the Fair Debt Collection Practices Act, Title 15, Section 1692 et seq.

107. "A tender is an offer of performance, made with the intent to extinguish the obligation when properly made, has the effect of putting the other party in default if he refuses to accept it ," Wiesenberg v. Hirshorn, 97 Cal App. 532, 275, P 997; Lovetro V.

Steers  234 Cal App. 2d 461, 44 Cal. Rptr. 604; Holland v. Paddock, 142 Cal App. 2d

534, 298 P 2d 587. "...The imposition of such conditions is waived by the offeree if he

does not specifically point out the alleged defects in the tender. "  Civil Code Sec. 1501;

Code of Civil Procedure Sec. 2076; Hohener v. Gauss (1963) 221 Cal. App. 2d 797, 34

Cal. Rptr. 656. "The rationale of the requirement of specific objection is that the offeror

should be permitted to remedy any defects in his tender; the offeree is therefore not

allowed to remain silent at the time of the tender and later surprise the offeror with hidden

objections, " Thomassen v. Carr, (1967) 250 Cal. App. 2d 341, 350, 58 Cal Rptr. 297;

Riverside Fence Co. v. Novak, (1969) 78 Cal. Rptr. 536; See Walker v. Houston; 215 Cal

742; 12 P2d 953 at 953, 87 A.L.R. 937. *The Defendant never accepted my offer to pay the*

*debt by failing to comply with my conditions precedent. They did this by failing to*

*validate the debt. THE MATTER IS SETTLED UNDER THE DOCTRINE OF NIHIL*

*DECIT.*

108. The Uniform Commercial Code also reflects these principals of common law that

once a debtor makes a good faith offer of performance and it is not accepted, the

obligation is extinguished, pursuant to UCC 3-603. The conditional offer to pay is the

necessary instrument to cause the discharge of the Defendant's Demand for Payment in

this matter. Please note under the tender laws, if the payment is made and refused, the

debt is discharged, please see UCC 3 - 603 and UCC 2-511. See Nygaard v. Continental

Resources, Inc; 598 N.W. 2d 851, 39 UCC 2d 851. As the Plaintiff, I have no other

recourse or remedy. Under California law I have made an offer of performance, which,

under California law extinguishes the obligation, see California Civil Code Section 1485,

1498, and 1501, and California Code of Civil Procedure Sections 2074 and 2076.

California Civil Code 1485 states as follows: "OBLIGATION EXTINGUISHED BY

OFFER OF PERFORMANCE. An obligation is extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with intent to extinguish the obligation. (Enacted 1872)". California Code of Civil Procedure states as follows: 2074 "OFFER TO PAY OR DELIVER AS EQUIVALENT TO ACTUAL TENDER, An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is if not accepted, equivalent to the actual production and tender of the money, instrument, or property. (Enacted 1872)." As a result, of the foregoing, I have tendered payment, and California statutes provide for the tender of payment by way of an offer of performance, which under California law is considered to be a tender of payment, when the offer is not accepted. California Civil Code Section 1498 states as follows: "PERFORMANCE OF CONDITION PRECEDENT. When a debtor is entitled to the performance of a condition precedent to, or concurrent with, performance on his part, he may make his offer to depend upon the due performance of such condition. (Enacted 1872 )" As a result of the foregoing, the debt obligation to JP MORGAN CHASE BANK, NA, and any and all successors-in-interest in this matter is extinguished.

109. The lender never produced a verified claim demonstrating that something of value or substance was loaned in the transaction. Therefore, the Defendant has no right to pursue this matter in court under Title 15 USC, Sections 1692 (g) and(e).

110. Therefore, the Defendant has no right to demand payment. Also, my good faith Offer of Performance was not accepted and therefore the obligation is extinguished. Although the defendant is poised to force me out of the property, they never produced evidence that they are the holder-in-due-course of the note, See **Exhibit G.**

**111. The rule of decision in California Federal courts is common law.** Under the Seventh Amendment to the Constitution for the united States of America, I are entitled to a common law trial by the jury. 443 Cans of Frozen Egg Product v. United States of America 226 US 172, 50 at 52 Morris v United States 8 Wall. 507, 19 L. ed. 481 The Sarah 8 Wheat. 391, 5 L. Ed. 644 50 at 51 United States v. La Vengeance (reported in 3 Dall. 297, 1 L. Ed. 610) United States v The Sally (in 2 Cranch 406, 2 L. Ed 320 and United States v The Betsy (in 4 Cranch 443, 2 Led. 673). "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed." -- Norton vs. Shelby County; 118, US 425 p. 442. See also, Miranda v. California; 384 U.S. 436 (1966) **"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them"** emphasis mine. Also California Courts are courts of record under the California Constitution, Article Six, Section One, requiring that as a court of record exercise jurisdiction under the course of the common law, see Ex Parte Thistleton, 52 Cal 220, stating that a court of record is a common law court, see also Black's Law Dictionary, Fourth Edition, page 426 for authority that a court of record is a common law court.


112. The law in California requires this matter to be litigated under common law, since every Superior Court is a court-of-record, pursuant to Article Six, Section One of the California Constitution, so that the Defendant is required to litigate title under the rules of the common law, as part of the foreclosure process, when there is an unlawful detainer case filed.

113. The Fair Debt Collection Practices Act must be adhered to in California, as in all other jurisdictions in the United States and the United States of America. If a debt cannot be validated by the creditor, it is unenforceable and the creditor must cease and desist all collection activities pursuant to Title 15, § 1692(g). A notice by the debtor that the debt is being disputed is all that is needed to compel the creditor to stop collecting the debt until debt validation has been completed. See Clarks Jeweler's v. Humble, 823 P 2d 818, 16 Kan App 2d 366 (1991). Furthermore, all collection agencies and debt collectors include a clause in their collection notices, which is a notice to the debtor that the debt collector is attempting to collect a debt. This is true of the notices I received from the Defendant. This provides tacit acknowledgment that the debt collectors must comply with Title 15, § 1692 et seq. The debt collectors cannot identify anything of substance or value loaned in the transaction and therefore cannot validate the debt. Be advised that "verification" is defined (in Black's Law Dictionary, Sixth Edition) as follows: *"Confirmation of correctness, truth, or authenticity by affidavit, oath, or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party."* Please Note that the actual note holder is, at this time unknown, so the Defendant cannot claim that they are the actual creditor without producing the original note to prove that they are a bona fide creditor.

114. All of the Defendants, JP MORGAN CHASE BANK, NA, WELLS FARGO BANK, NA, as Trustee of WAMU Mortgage Pass through Certificates, Series 2005-PR4 in 2005,  RANDALL D. NAIMAN, and NAIMAN LAW GROUP, PC, have violated Section 1641(f) and 1641(g) of Title 15 US Code, as follows: the Defendants JP MORGAN CHASE BANK, NA, and WELLS FARGO BANK, NA as Trustee of

WAMU Mortgage Pass through Certificates, Series 2005-PR4 has failed and refused to disclose the actual note-holder-assignee to whom this promissory note was transferred and assigned as specifically required under Title 15, US Code, Section 1641(g), and RANDALL D. NAIMAN and NAIMAN LAW GROUP, PC have assisted them in violation of the above sections of law, by filing a civil action of Superior Court in Calaveras County, without their client, WELLS FARGO BANK, having standing.

115. In addition, the Defendant, JP MORGAN CHASE BANK, NA, has functioned as a loan servicer, without full disclosure of the identity of the actual-note-holder, and taken on the identity and character of the actual creditor and note-holder in violation of Title 15 US Code, Subsection 1641(f) and they have failed and refused to provide full disclosure of the identity of the actual-note-holder and assignee and all other elements of disclosure required under Title 15, US Code, Section 1641(g).

116. The text of Title 15 US Code, Section 1641(f) is as follows:

**1641(f) Treatment of servicer**
**(1) In general**
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.
**(2) Servicer not treated as owner on basis of assignment for administrative convenience**
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

**(3) "Servicer" defined**

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605 (i)(2) of title 12.

**(4) Applicability**

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

117. The text of Title 15 US Code, Section 1641(g) is as follows:

**1641(g) Notice of new creditor**

**(1) In general**

In addition to other disclosures required by this subchapter, *not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in*

*writing of such transfer, including*—

**(A)** the identity, address, telephone number of the new creditor;

**(B)** the date of transfer;

**(C)** how to reach an agent or party having authority to act on behalf of the new creditor;

**(D)** the location of the place where transfer of ownership of the debt is recorded; and

**(E)** any other relevant information regarding the new creditor.

**(2) Definition**

*As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.*

118. "A loan may be defined as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement, express or implied, to repay the sum with or without interest." Parsons v. Fox; 179 Ga 605, 176 SE 644. Also see Kirkland v. Bailey, 155 SE 2d 701 and United States v. Neifert White Co., 247 Fed Supp 878, 879.

119. A party alleging to be creditor must prove standing. The Defendant has failed or refused to produce the actual note, which the Defendant alleges that I owe. Where the foreclosing party cannot prove the existence of the note, then there is no note. As a result, the Defendant lacks standing to enforce the bank loan, which was entered into by me with WASHINGTON MUTUAL BANK, FA, for the purchase of the subject land and buildings, the subject property. It appears, from a review of the SEC website, EDGAR ON LINE that many banks, such as WELLS FARGO BANK, NA for example, sell all of their notes to mortgage backed securities that they create themselves through their own investment company, such as WELLS FARGO ASSET SECURITIES CORP.  It is clear from the numerous investor lawsuits filed against banks and the REMICS they set up, that even small regional banks have securitized all of their notes and that they no longer have them in their possession. To recover on a promissory note, the Defendant must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the Defendant is the owner or holder of the note; and (4) that a certain balance is due and owing on the note.  See In Re: SMS Financial LLC. v. Abco Homes, Inc. . No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.) Volume 29 of the New Jersey Practice Series, Chapter 10 Section 123, page 566, emphatically states, " ...; and no part payments should be made on the bond or note unless the person to whom payment is made is able to produce the bond or note and the part payments are endorsed thereon.

120. It would seem that the mortgagor would normally have a Common law right to demand production or surrender of the bond or note and mortgage, as the case may be. See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469.  In Carnegie Bank v Shalleck ; 256 N.J. Super 23 (App. Div  1992), the Appellate Division held,

"When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302 "Since no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. New Jersey common law dictates that the Plaintiff prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the Plaintiff is the owner and holder of the alleged note, and prove that a certain balance is due and owing on any alleged note." Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security.

121. The landmark case stating this doctrine is Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir. 1977), "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." The above Ninth Circuit ruling was affirmed six times by the Ninth Circuit Court of Appeals and similar rulings were handed down in the Eighth and Sixth Circuits. Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession." In addition, the note is an adjustable rate note, with an adjustable rate rider made a part of the note, which states in the body of the document that the rider is deemed to amend and supplement the deed of trust, which changed the note from a conditional promise to pay to an unconditional promise to pay, and means that the sale of the note

was unlawful and in violation of Sections 3104 and 3106 of California Commercial Code, since a conditional promise to pay cannot be sold or transferred, thus the note is unenforceable by anyone but the original note holder. The note was sold to an asset-backed-security and is therefore unenforceable by the Defendant and their agents.

122. In order to prove damages in foreclosure of a debt, a party must enter the account and general ledger statement into the record through a competent fact witness. To prove up a claim of damages, the foreclosing party must enter evidence incorporating records such as a general ledger and accounting of an alleged unpaid promissory note, the person responsible for preparing and maintaining the account general ledger must provide a complete accounting which must be sworn to and dated by the person who maintained the ledger. See Pacific Concrete F.C.U. V. Kauanoe,   62 Haw.334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807,96 Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority; 28 Conn.L. Rptr. 371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc.; 513 A.2d 1218, 201  (1986). See also Solon v. Godbole;163 Ill. App. 3d 845, 114 Il; Remington Investments, Inc., □v. Hamedani, 55 Cal.App.4th 1033 (1997).

123. The Defendant, JP MORGAN CHASE BANK, NA, and their predecessor-in-interest, have not incurred a financial loss in the lending of Federal Reserve Notes. The Defendants JP MORGAN CHASE BANK, NA and WELLS FARGO BANK, NA, as Trustee of WAMU Mortgage Pass through Certificates, Series 2005-PR4 in 2005 has received payment in the form of credit enhancements, discussed above, as part of the foreclosure process, so that once an accounting of the mortgage general ledger has been

completed, it will be obvious that these Defendants, has been paid, and nothing else is owed in this matter. Also, **Exhibit J** proves the factual lack of any financial loss or any assets of the alleged creditor pledged in the transaction. As anyone reviewing this exhibit can see, the banks in the United States of America create money at no cost to themselves. Please see page 23 Question number 125. The statement by the House Banking Committee is as follows; "The business of banks is to lend money. The profit comes from the difference between the cost of creating money and the price they charge borrowers for that money. *Now the cost of creating money is negligible*. Congress has delegated the power to create money to the banking system without a charge. The banks do not pay a license fee or a payment charge for their reserves. *Thus the raw materials the banks use cost them nothing*." (Emphasis added.) Thus the Defendants, JP MORGAN CHASE BANK, NA, and WELLS FARGO BANK, NA cannot allege that they incurred a financial loss, and they have no standing to assert a financial loss or foundation to allege that they incurred a financial loss, based upon the above statement issued by the House Banking and Currency Committee.

124. I, the Plaintiff, am aware and allege that the Defendants believe that they have an exclusive right, title and interest in the subject property, which is adverse to my interest, as Plaintiff, and that they do not have said right, title and interest, based upon the elements of fraud and failure of consideration, lack of the right of subrogation, and the unlawful refusal to produce evidence that they are in possession of the note as required under various sections of uniform commercial code, discussed above. The claims of the Defendants are without any rights whatsoever, and the Defendant has absolutely no legal or equitable estate, right, title or interest in the subject land and buildings that is the

subject of this complaint. I, the Plaintiff, hereby seek a declaration that the exclusive title to the subject land and buildings, the subject property be and is vested in the Plaintiff and that the Defendant be declared to have no estate, right, title or interest, whatsoever, in the subject land and buildings that is the subject of this complaint. I further seek a court order that the Defendant cease and desist any and all actions to assert any right, title, interest or possession in the subject land and buildings, and disclaim any right, title and interest in the subject land and buildings.

### SECOND CAUSE OF ACTION
#### (Wrongful Foreclosure)

**(Against Defendant, And Other Loan Servicers Acting As Debt Collectors To Be Alleged By Amendment)**

125. I, Scott J. Davidson, hereby allege and re-allege all of the foregoing Paragraphs as part of this Cause of Action with the same force and effect as if fully set forth herein.

126. Because of the predatory nature of the loans, fraud in procuring the loans, securitizing the notes, and violations of federal and state law relating to the making of the loan, and improper assignments, the Defendant had no right to foreclose on the Note or security, nor did they have any right to file an unlawful detainer or evict Plaintiff and their efforts to do so constitute wrongful foreclosure.

127. I, the Plaintiff am informed and believe, and thereupon allege, that the Defendant, JP MORGAN CHASE BANK, NA, and WELLS FARGO BANK, as Trustee are not in

possession of the note pertaining to the Subject home and land, and are and were not otherwise entitled to payment.

128. Defendant was not "person[s] entitled to enforce" the security interest on the Subject Properties.

129. The final stage of a foreclosure is a sale of the property at public auction pursuant to state law.  Any bid by the trustee for itself is suspect and unlawful. It is unlawful to offer to accept, or actually accept, consideration in order to not bid or to fix or restrain bidding. If an interested party is defrauded as a result, that party can recover damages and the wrongdoer can be fined, imprisoned, or both, pursuant to state law. At the auction third parties can bid to purchase the property. The current party entitled to obtain the money or property from the sale must give the trustee instructions on how much to accept at the sale, and/or whether to "credit bid" any specific amount, up to the full amount owed to the current beneficiary on the loan. Securitizers, and each of them, were not, and are not; the current beneficiaries on the deed of trust entitled to give instructions to the trustee, nor were they or are they entitled to keep the proceeds from any sale or the property. In commencing and processing a foreclosure said Securitizers committed deceit or fraud within the meaning of state law and Defendants knew or should have known of the violations of state and federal law entitling the Plaintiff to damages.

130. The NODs, Notices of Trustee Sales, and Trustee's Deeds contained false

1   statements. As more specifically set forth above, Defendants clients, and each of them,

2   were not entirely forth coming about the fraudulent concealment engaged in by the

3   defendants.

4

5   131. The Defendant failed to meet its burden of producing evidence. Except as otherwise

6   provided by law, a party has the burden of proof as to each fact the existence or

7   nonexistence of which is essential to the claim for relief or defense that he is asserting.

8   [Evid. Code § 500] The obligation of a party to sustain the burden of proof requires the

9   production of evidence for that purpose. [*Parker v. City of Fountain Valley* (1981) 127

10  Cal.App.3d 99, 113]. There is no evidence that the Defendant is in possession of the

11  original note and deed of trust. Please see Federal Rules of Evidence, Rule 602.

12

13

14  132. Where no evidence is introduced upon an issue, a finding thereon should be

15  against the party having the burden of proof. [*Heesy v. Vaughn* (1948) 31 Cal.2d

16  701, 708-709].

17

18

19              **THIRD CAUSE OF ACTION**

20          ( Slander of Title, fraudulent inducement)

21

22  133. **First.** I, Scott J. Davidson, hereby allege and re-allege all of the foregoing

23  Paragraphs as part of this Cause of Action with the same force and effect as if fully set

24  forth herein. Based upon the foregoing, the Defendant is slandering title to the subject

25  property, and is attempting an act of fraudulent conversion. The Defendant has a duty to

26  refrain from attempting to foreclose when they lack the right of subrogation and when

27

28

they no longer have the original note in their possession because the note has been sold

and securitized. I ask the court to provide declaratory relief to order the defendant to

cease and desist and declare null and void the foreclosure notices, abate, curtail, cease and

desist any collection activities by the defendants for lack of due process, lack of a claim

filed against the original land patent, and breach of contract. **The Defendants, and each**

**of them, including JP MORGAN CHASE BANK, NA, WELLS FARGO BANK,**

**NA, as Trustee of WAMU Mortgage Pass through Certificates, Series 2005-PR4**

**in 2005, The mortgage-backed-security (or their undisclosed third party note**

**holder), have not produced any evidence whatsoever that they are holding the**

**original note and have not produced evidence that they are a co-signer on the**

**original promissory notes.** The Defendant, JP MORGAN CHASE BANK, NA, and

WELLS FARGO BANK, NA, as Trustee of WAMU Mortgage Pass through

Certificates, Series 2005-PR4 in 2005 and any of their principals or agents, *have,*

*therefore, no right of subrogation and no right to foreclose on the subject property.*

Therefore, the act, whereby, the Defendant arranged to file a Notice of Default, is an act

of slander of title, whereby they claim, under the color of law and under the official

trappings of official looking documents, ownership of the subject private property.


134. The Defendant's Undisclosed-Third-Party-Note-Buyer has never produced any

evidence that they have paid the entire mortgage debt in full, thereby failing to prove a

second element that is required of someone who is claiming to have a right of subrogation,

as discussed above. The Defendant's Third Party Note Buyer and each of them, therefore,

has no right of subrogation as a stranger to the original transaction and as someone who has

not paid the entire mortgage debt in full. See Aetna L. Ins. Co. v. Middleport, 124 US 534.

In an action to annul a promissory note and deed of trust which were then in the hands of an assignee, evidence supported findings that foreclosure during litigation would produce great or irreparable injury to the Plaintiff and therefore issuance of an order of cease and desist restraining assignees from disposing of a note and deed or from foreclosing was not an abuse of discretion, see Daniels v. Williams; 270 P. 2d 556, 125 C.A. 2d 310. In this case I am asking for an order to cease and desist. I will suffer irreparable harm, the loss of my home, if the court does not restrain the Defendant from their unlawful actions by way of an order of cease and desist.

135. **Second.** The Defendant has never produced the following; A.) evidence of a lien, a security interest or some kind of right, title or interest in the subject property or any sort of claim that is superior to my own, based upon a right of subrogation and upon valuable consideration, and possession of the note and being a party to the loan and a judgment by a common law court, WHICH IS REQUIRED UNDER FEDERAL LAW PURSUANT TO THE FIFTH, SEVENTH AND FOURTEENTH AMENDMENTS TO THE US CONSTITUTION  PRIOR TO ANY ATTEMPT TO SELL THE PROPERTY;

136. This is also required by the rules of the common law, pursuant to the Seventh Amendment, see 443 Cans of Frozen Egg Product v United States of America; supra; and B.) to identify the valuable consideration or lawful money that gives them power to enforce the original note and deed of trust.

137. Therefore, under the doctrine of laches the Defendant's Principal, the Undisclosed Third Party Note Buyer is barred from now claiming to have *a right of subrogation and*

1    *thereby any* right, title or interest in the property or a lien or a security interest over us,

2    Scott J. Davidson, the Plaintiff, or my private property described in **Exhibit A**. Under the

3    principal of estoppel by silence, the Defendant remains silent and still does not respond to

4    the constructive notice or issues of law raised in the constructive notice/ Qualified

5    Written Request.

6

7    ### FOURTH CAUSE OF ACTION

8    (Violation of the Fair Debt Collection Practices Act)

9

10

11    138. I, Scott J. Davidson, the Plaintiff, allege and re-allege the foregoing Paragraphs as

12    Paragraphs of this Cause of Action with the same force and effect as if fully set forth

13    herein.

14

15    139. The US Supreme Court has ruled that an error of law qualifies as violation of the

16    Fair Debt Collection Practices Act, Title 15, Section 1692 et seq, see Jerman v Carlisle

17    Mc Nellie, Rini, Kramer & Ulrich LPA et al., 559 U.S. _____, 130 S. Ct. 1605;

18    decided April 21, 2010. The multiple violations of California Commercial Code

19

20    especially 3309 cited previously qualify as a knowing and intentional violation of the Fair

21    Debt Collection Practices Act in light of the ruling by the Ninth Circuit Court of Appeals

22    in Matter of Staff Mort. & Inv.Co., 550 F 2d 1228, (1977), discussed above. The

23    Defendant, especially the attorneys, violated my rights under the FDCPA, in particular the

24    following: The Defendant was asked to comply with the Fair Debt Collection Practices

25    Act, and has violated the FDCPA, Title 15 USC, sections, 1692(d), harassment,

26    1692(e)(2)(A) 1692(e)(5), false representations, 1692(f)(6)(A) unfair practices, 1692(g)

27

28    Complaint For Damages Page 73

debt validation and 1692(k). The multiple sections of California Commercial Code, especially Section 3309, in light of Matter of Staff Mortg. & Inv. Co., supra qualifies as a violation of the above sections of the FDCPA, with willfulness and intent. The Defendant either knew or should have known that they were violating the above-mentioned sections of the FDCPA and the multiple sections of California Commercial Code cited above. The Defendant foreclosed and filed an action for unlawful detainer in the Superior Court in spite of the fact that they do not possess the original note and have securitized the note and have steadfastly refused to bring forward the original note with an endorsement as required under the above cited sections of the California Commercial Code, and therefore have no standing to foreclose and no standing to file a Petition for unlawful detainer. These actions constitute violations of the FDCPA as discussed above.

## RELIEF REQUESTED

140.    In this case, the foreclosure documents were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred. The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, 1692i, and 1692k.

141.    Plaintiff is entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

WHEREFORE Plaintiff prays for Judgment in my favor and against the Defendants as follows:

142.    For an award of compensatory damages in an amount to be proven at time of trial in favor of the Plaintiff and against the Defendants, JP MORGAN CHASE BANK, NA,

1    WELLS FARGO BANK, NA, as Trustee of WAMU Mortgage Pass through

2    Certificates, Series 2005-PR4 in 2005, its Assignee whose name is unknown to the

3    Plaintiff, the loan servicer of the Plaintiff's home loan, and the trustee in an amount to be

4    proven at time of trial, but in any event in an amount above the arbitration limits of the

5    court;

6

7    143.    For punitive damages in an amount to be proven at time of trial;

8

9    144.    For the Declaratory relief and an order of cease and desist prayed for in the

10   General Allegations of Plaintiff's Complaint;

11

12   145.    For Plaintiff's costs of suit incurred herein;

13

14   146.    For an award of Plaintiff's reasonable attorney's fees pursuant to UCC and

15         For a trial by jury; and

16   147.    For prejudgment and post-judgment interest on any damage award at the

17   maximum rate allowed by law; and

18

19   148.    For such other and further relief as the Court may deem just and proper in the

20   premises.

21

22                  **ADDITIONAL RELIEF REQUESTED**

23   149.    **One.**  For abatement of any all past, current and future claims of any right, title or

24   interest in the property, abatement of demands for mortgage payments, current past and

25   future, discharge of any current or past demands for payment and I ask that the Defendant

26   be ordered to remove the subject property from any list of assets on their books, and

27   remove any records of this fraudulent debt with credit reporting agencies. I further ask

28

1    that the ACTIONS taken by the defendant to place the property for sale to the public in an

2    unlawful foreclosure proceeding or trustee sale, in violation of the due process provisions

3    of the Fifth and Fourteenth Amendments to the US Constitution, violations of the FAIR

4    DEBT COLLECTION PRACTICES ACT, Title 15 USC, Section 1692c, 1692d, 1692e,

5    1692f, 1692g, 1692i and California common law be abated and reversed and that they

6    cease and desist their actions and activities in pursuance thereof. I also ask for a court

7    order compelling the Defendants to cease any current attempt to take possession and

8    occupancy of the subject property and that the Defendants JP MORGAN CHASE BANK,

9    NA or WELLS FARGO BANK, NA be compelled to reconvey title and issue a document

10   stating that the debt is satisfied.

11

12   150.    **Two.** For a declaratory judgment that because the above described property is held

13   in alloidum by me, Scott J. Davidson, that JP MORGAN CHASE BANK, NA's

14   principals and agents including any undisclosed third party note buyer, has never had the

15   right of subrogation, that Declaratory judgment be issued that no superior title exists by

16   anyone, including the Defendants, and each of them, and that the Defendant has no

17   security interest, right, title or interest or lien in said private allodial property, the

18   Defendant must be found to be without any lawful claim against my private allodial

19   property, and they are, therefore, compelled to disclaim any right, title or interest in the

20   subject property. And, furthermore, I seek a court order that title to the subject property is

21   quieted in favor of the Plaintiff.

22

23   151.    **Three.** For an order of Cease and Desist, ordering the Defendant and their agents,

24   including any unregistered foreign agents, to cease and desist any further actions to sell

25   the property subsequent to the fraudulent foreclose on this alleged debt, because of the

26   failure of consideration and because of the lack of the right of subrogation, and therefore,

27   the lack of any standing to sue for foreclosure or for eviction by the Defendant.

28

1

2    152.    In addition, I ask for a court order of Cease and Desist ordering the Sheriff in

3    Santa Clara County to refrain from enforcing any and all actions for eviction or

4    foreclosure, taken by the Defendant, or their agents and assigns, because The Mortgage

5    backed Security (or the Undisclosed Third Party Note Buyer) does not have the right of

6    subrogation as a stranger to the transaction, and because of the gap in title that was

7    created by the failure of the current-note-holder to produce a proper accounting and

8    demonstrate who is the current-holder-in-due-course by production of the original-note,

9    with an endorsement on the note and not a copy. I ask that the order of cease and desist,

10   command CALVERAS COUNTY SUPERIOR COURT to refrain from taking any

11   actions whatsoever to order an eviction of me from the subject property, until the time

12   that this matter is settled and that all appeals have run their course.

13
14   153.    **I AM NOT ASKING FOR MONETARY DAMAGES** if this complaint is

15   uncontested. Uncontested means that no answer and no motions or other pleadings are

16   filed by the Defendant. I am only seeking to quiet the title in my favor in order to obtain

17   declaratory judgment that the Defendant has no right, title or interest in the subject

18   property and no power to foreclose. If, however, if the complaint is contested, then I ask

19   for damages as described herein. I, Scott J. Davidson, the Plaintiff in this matter, demand

20   punitive damages FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND

21   MALICE, from the defendant JP MORGAN CHASE BANK, NA, in the amount of $

22   80,000.00, SILVER SPECIE sum certain payable in silver one ounce coins minted by the

23   United States Treasury. I, Scott J. Davidson, the Plaintiff in this matter, demand punitive

24   damages FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE, from

25   the defendant WELLS FARGO BANK, NA, in the amount of $ 80,000.00, SILVER

26

27

28

SPECIE sum certain payable in silver one ounce coins minted by the United States Treasury. I, Scott J. Davidson, the Plaintiff in this matter, demand punitive damages FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE, from the defendant RANDALL D. NAIMAN, in the amount of $ 80,000.00, SILVER SPECIE sum certain payable in silver one ounce coins minted by the United States Treasury.

154.    I, Scott J. Davidson, the Plaintiff in this matter, and the aggrieved, injured party demand cost for this suit, if the suit is contested.

155.    Leave to amend the complaint pursuant to Federal Rules of Civil Procedure § 15(a) once discovery is completed and the defendants have raised the usual FRCP 12(b)(6) objections and the usual avalanche of procedural gimmicks.

156.    An order from the court explaining where the complaint is deficient and how to correct it.

157.    Such other relief as the court deems just, proper and equitable.

Respectfully Submitted,

Dated: 7/20/11

Scott J. Davidson

Pro Hac Vice

**VERIFICATION**

I have read the **COMPLAINT FOR DAMAGES, CIVIL RIGHTS VIOLATIONS, U.S.C. Title 42, Section 1983,** and know the contents thereof to be true; and the same is true of my own knowledge, except to the matters, which are therein stated on my information and belief, and as to those matters, I believe them to be true. The foregoing is true, correct, complete and not misleading.

Sealed by the voluntary act of my own hand on this _____20th_____ day of the

_____7th_____ month, in the Year of our Lord, two thousand and eleven.

Scott J. Davidson

## LIST OF EXHIBITS

| | |
|---|---|
| EXHIBIT A | DEED TO THE SUBJECT PROPERTY |
| EXHIBIT B | DEED OF TRUST |
| EXHIBIT C | ASSIGNMENT OF DEED OF TRUST |
| EXHIBIT D | SAMPLE PROSPECTUS |
| EXHIBIT E | BANKRUPTCY RULING IN ARIZONA |
| EXHIBIT F | BANKRUPTCY RULING IN IDAHO |
| EXHIBIT G | NOTICE OF DEFAULT |
| EXHIBIT H | MODERN MONEY MECHANICS |
| EXHIBIT I | COPY OF A NOTE WITH AN ENDORSEMENT |

| | | |
|---|---|---|
| 1 | EXHIBIT J | QUALIFIED WRITTEN REQUEST/ OFFER OF |
| 2 | | PERFORMANCE |
| 3 | EXHIBIT K | HOUSE BANKING COMMITTEE REPORT |