**E-FILED on 11/23/11**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT J. DAVIDSON,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE N.A., WELLS FARGO BANK, NA AS TRUSTEE OF WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-PR4, RANDALL D. NAIMAN, NAIMAN LAW GROUP, PROFESSIONAL CORPORATION,<br><br>Defendants. | No. CV 11-03566 RMW<br><br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE<br><br><br>**[Re Docket Nos. 26, 27]** |

Plaintiff Scott Davidson ("plaintiff"), proceeding *pro se*, brings this action against defendants JP Morgan Chase, N.A., Wells Fargo, N.A., Randall D. Naiman and Naiman Law Group (collectively "defendants") alleging violations of the Federal Debt Collection Practices Act and state law claims for wrongful foreclosure, quiet title, slander of title and fraudulent inducement. Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), or alternatively, for a more definite statement. Randall D. Naiman and Naiman Law Group move additionally to strike the complaint under Cal. Code Civ. P. § 425.16. For the reasons below, the court GRANTS defendants' motions to dismiss with prejudice.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE —No. CV 11-03566 RMW

## I. BACKGROUND

On August 27, 2005, plaintiff entered into a mortgage loan transaction with Washington Mutual Bank ("WaMu") to acquire residential property (the "subject property") located in Copperopolis, California. Dkt. No. 1 (Complaint) ¶ 5. Plaintiff executed a promissory note (the "Note") and deed of trust ("DOT") in favor of WaMu, which were recorded on September 30, 2005. *Id.* At some point in late 2005, the Note was allegedly "sold ... to a mortgage backed security" called "WAMU Mortgage Pass Through Certificates, Series 2005-PR4." *Id.* ¶¶ 3, 5. Plaintiff was not notified of the assignment. *Id.* ¶ 3.

On September 25, 2008, WaMu was declared insolvent, and the Federal Deposit Insurance Corporation ("FDIC") was appointed its Receiver. The same day, the FDIC executed a Purchase and Assumption Agreement ("P&A Agreement") transferring "all right, title and interest of the Received in and to all of the assets" of WaMu to defendant JP Morgan Chase Bank, N.A. ("Chase"). Dkt. No. 28, Ex. A (P&A Agreement) at 16.[1]

Plaintiff admits that he did not make "monthly payments on the subject property for some time." Dkt. No. 1 ¶ 11. On January 14, 2011, Chase assigned its interest in the DOT and the Note to Wells Fargo Bank, N.A. as Trustee of WaMu Mortgage Pass-Through Certificates, Series 2005-PR4 ("Wells Fargo"). Dkt. No. 1, Ex. C. Concurrently, a Notice of Default and Election to Sell (the "Notice") was issued to plaintiff. Dkt. No. 1, Ex. G.[2] The Notice indicated that plaintiff owed mortgage payments totaling $14,260.42, and that he could "arrange for payment to stop foreclosure" by contacting Chase. *Id.*

Apparently, plaintiff failed to make further payments following receipt of the Notice. On May 13, 2011, a Notice of Trustee's Sale in connection with the DOT was recorded and the subject

---

[1] The court takes judicial notice of the P&A Agreement, which is available on the FDIC's website, under Fed. R. Evid. 201. *See* Fed. R. Evid. 201 (courts may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Molina v. Washington Mut. Bank*, No. 09-CV-00894, 2010 WL 431439, at *3 (S.D. Cal. Jan. 29, 2010) (taking judicial notice of the WaMu-Chase P&A Agreement).

[2] It is not entirely clear whether the Notice of Default was issued by Chase or by Wells Fargo. The complaint suggests that Chase, rather than Wells Fargo, is the entity "making preparations to foreclose on the subject property." *See* Dkt. No. 1 ¶ 11. The court will therefore assume for the purposes of this motion that Chase issued the Notice.

property was sold to Wells Fargo. *See* Dkt. 26-1, Ex. A. On May 31, 2011, defendants Randall D. Naiman and Naiman Law Group, P.C. (collectively "Naiman") served plaintiff with a three-day notice to quit the subject property on behalf of Wells Fargo.[3] *Id.* On June 20, 2011, Namain filed a complaint against plaintiff for unlawful detainer in Calaveras County Superior Court. *Id.*

Plaintiff filed the instant action on July 20, 2011. In a seventy-nine page complaint replete with case citations, legal argument, and condemnation of the banking industry, plaintiff asserts causes of action for (1) Violations of the Fair Debt Collection Practices Act, (2) Quiet Title, (3) Wrongful Foreclosure, (4) Slander of Title, and (5) Fraudulent Inducement. The thrust of plaintiff's complaint is that because the Note and the DOT were allegedly assigned to a mortgage backed security in 2005, any subsequent transfer from WaMu to Chase in 2008 was invalid. Plaintiff therefore argues that in instituting foreclosure proceedings, defendants "falsely represented or implied that the debt was owing to [them]." Dkt. No. 1 ¶ 70. Plaintiff also contends that by filing an unlawful detainer action "in spite of the fact that they do not possess the original note," defendants have engaged in "harassment" and "unfair practices." *Id.*

## II. ANALYSIS

**A. Subject matter jurisdiction**

Federal courts may exercise jurisdiction over claims only where authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In most cases ... subject matter jurisdiction is conferred upon a federal district court if the action raises a federal question, 28 U.S.C. § 1331, or if there is diversity jurisdiction. 28 U.S.C. § 1332." *Brambila v. Reo Bay Area, LP*, 2011 WL 4031142, at *2 (N.D. Cal. Sept. 8, 2011). Under Federal Rule of Civil Procedure 12(h)(3), a district court must dismiss an action if it determines at any time that it lacks subject matter jurisdiction. Federal Courts are required to examine jurisdictional issues sua sponte. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002).

**B. Violation of the Fair Debt Collection Practices Act ("FDCPA")**

---

[3] The court takes judicial notice of the complaint filed in Calaveras County Superior Court and attached Notice to Vacate under Fed. R. Evid. 201.

The FDCPA prohibits "debt collectors" from resorting to "false, deceptive, or misleading representation or means" in connection with the collection of any debt. 15 U.S.C. § 1692(e)(10). Congress intended the FDCPA to "eliminate abusive debt collection practices by debt collectors ... and to promote consistent state action to protect consumers against debt collection abuses." *Schlegel v. Wells Fargo Bank, N.A.*, No. C 10–05679, 2011 WL 2621668, at *2 (N.D. Cal. July 5, 2011) (Breyer, J.) (quoting 15 U.S.C. § 1692).

To state a claim under the FDCPA, a plaintiff must allege facts showing that (1) the defendant was collecting debt as a debt collector, and (2) its debt collection actions were violative of a federal statute. *Schlegel*, 2011 WL 2621668 at *2 (citing *Jerman v. Carlisle, et al.*, ––– U.S. ––––, 130 S.Ct. 1605, 1606 (2010)). Importantly, the FDCPA distinguishes between "debt collectors," who are covered by the statute, and "creditors," who are not. A "debt collector" is "any person who … regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statutory definition of debt collector excludes "any person collecting or attempting to collect … a debt which was not in default at the time it was obtained." 15 U.S.C. § 1692a(6)(F). A creditor, on the other hand, is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). While creditors generally contemplate an "ongoing relationship" with debtors, debt collectors may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Schlegel*, 2011 WL 2621668, at *4 (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).

Non-judicial foreclosure does not constitute "debt collection" for purposes of the FDCPA. *Landayan v. Wash. Mutual Bank, No.*, C 09-0916, 2009 WL 3047238, at * 3 (N.D. Cal. Sept.18, 2009). As one court in this circuit has explained, "since a transfer in interest is the aim of a foreclosure, and not a collection of debt, the foreclosure proceeding is not a debt collection action under the FDCPA." *Hanaway v. JPMorgan Chase Bank,* No. SACV 10-1809, 2011 WL 672559, at *4 (C.D. Cal. Feb. 15, 2011); *see also Aniel v. T.D. Serv. Co.*, No. C 10-03185, 2010 WL 3154087, at *1 (N.D. Cal. Aug. 9, 2010) ("Allegations relating to the FDCPA claim relate to foreclosure

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE   —No. CV 11-03566 RMW
4

proceedings and courts throughout this circuit have concluded that foreclosure does not constitute 'debt collection' under the FDCPA").

### 1. Defendants are not "debt collectors" under the FDCPA

Plaintiff's FDCPA claims must fail because none of the defendants were engaged in "debt collection" as defined by the statute. Chase is clearly not a "debt collector" within the meaning of the FDCPA because plaintiff does not allege that Chase "regularly collects … debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Furthermore, plaintiff does not allege that his debt was in default at the time it was purportedly assigned to Chase by the FDIC in 2008. *Id.* While it is not clear when plaintiff stopped making his mortgage payments, given that Chase purportedly acquired plaintiff's mortgage more than two years before issuing a Notice of Default, it is apparent that the bank contemplated an "ongoing relationship" with plaintiff at the time the P&A Agreement was executed. *See Schlegel*, 2011 WL 2621668, at *4. Chase is therefore best characterized as a "creditor" whose conduct falls outside the scope of the FDCPA. Moreover, to the extent that the Notice offered plaintiff an opportunity to avoid foreclosure by paying his outstanding debt, such conduct would not fall under the FDCPA because it relates to non-judicial foreclosure. *Landayan*, 2009 WL 3047238, at * 3.

Wells Fargo is also not a "debt collector" under the Act. The complaint indicates that Wells Fargo "is named because they claim to be a trustee of the [mortgage backed security]," not as a result of its alleged debt collection practices. Dkt. No. 1 ¶ 41. Although Wells Fargo acquired—or believed it had acquired—a debt in default, it did not seek to collect a debt, identify itself as a debt collector in its communications with plaintiff, or demand payment from plaintiff. *See Schlegel*, 2011 WL 2621668, at *4 (noting that the acquisition of a mortgage in the default does not necessarily render the acquiree a debt collector); *compare Schlosser*, 323 F.3d at 535-6 (finding that an entity that acquired mortgages believed to be in default, sent a demand letter identifying itself as a "debt collector" and asserted its right to foreclose could liable under the FDCPA). Indeed, it appears that Wells Fargo had no contact with plaintiff at all until the initiation of the unlawful detainer action following the foreclosure sale. Such conduct does not run afoul of the FDCPA. *See*

*Brambila v. Reo Bay Area, LP*, No. C 11-03202, 2011 WL 4031142, *5 (N.D. Cal. Sept. 8, 2011) (Illston, J.) (institution of an unlawful detainer action is not debt collection under the FDCPA).

Finally, plaintiff's allegations do not demonstrate that Naiman engaged in "debt collection" as defined by the FDCPA. Like Wells Fargo, Naiman did not seek to collect a debt. Instead, the law firm, acting on behalf of Wells Fargo, issued a Notice to Vacate and commenced an unlawful detainer action *after* the foreclosure sale.

*Jerman v. Carlisle, et al.*, ––– U.S. ––––, 130 S.Ct. 1605, 1606 (2010), cited by plaintiff, does not compel a different conclusion. In *Jerman*, a law firm filed a foreclosure action along with a "Notice" served on the mortgagor indicating that his mortgage debt would be assumed valid unless it was disputed in writing. The district court found that the notice violated provisions of the FDCPA governing the contents of a debt notice, but concluded that the law firm was protected by the statute's "bona fide error" exception. *See id* at 1610. The Supreme Court disagreed, holding that a lawyer's erroneous application of the FDCPA's requirements could subject him or her to liability under the statute. Unlike the law firm in *Jerman*, Naiman did not correspond with plaintiff regarding his debt obligations or pending foreclosure proceedings. Simply put, by the time Naiman came onto the scene, the subject property had already been sold, and there was no longer any debt to collect. *Jerman* is therefore inapposite here.

Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's claims under the FDCPA.

**B. State Law Claims**

Dismissal of the FDCPA claim leaves the complaint devoid of any federal claims. As such, no federal question jurisdiction remains under 28 U.S.C. § 1331. The complaint further fails to allege any facts that would support diversity jurisdiction under 28 U.S.C. § 1332. The remaining claims are all state law causes of action for quiet title, fraud, slander of title and wrongful foreclosure. Given the early state of the litigation, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c); *see also Brambila*, 2011 WL 4031142, at *5 (declining to exercise supplemental jurisdiction over state law claims after finding that defendants were not debt collectors under the FDCPA); *Aniel v. EMC Mortg. Corp.*, No. C 10-

5170, 2011 WL 835879, *5 (N.D. Cal. Mar. 4, 2011) (same); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction.").

**C. Leave to Amend**

Dismissal without leave to amend is appropriate where the complaint cannot be saved by any amendment. *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007). "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). However, a pro se complaint may be dismissed with prejudice where it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

At oral argument, plaintiff did not indicate that he could add any facts to his complaint if given leave to amend. He also stated that he had already filed an action in state court alleging his state law claims. That suit was apparently dismissed with prejudice. Given plaintiff's admission that he cannot support his federal claim with additional facts, the court finds that amendment would be futile. Accordingly, plaintiff's claims are dismissed with prejudice.

### III. ORDER

For the foregoing reasons, the court grants the motion to dismiss for failure to state a claim with prejudice. The clerk shall close the file.

DATED: November 23, 2011

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge